FILED
2024 Dec-09 PM 12:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

FILED
2024 DEC -9 A 11: 03
U.S. DISTRICT COURT
N.D. OF ALABAMA

DAGNEY JOHNSON BURT *et. al*,
   On behalf of herself and all others
   similarly situated,

     *Plaintiff*,

v.

VOLKSWAGEN GROUP OF
AMERICA, INC. and
VOLKSWAGEN AG.

     *Defendants.*

Case No: _____

Jury Trial Demanded

## CLASS ACTION COMPLAINT

## INTRODUCTION

1.      Plaintiff Dagney Johnson Burt ("Plaintiff") brings this putative class action complaint against Defendants Volkswagen Group of America, Inc. and Volkswagen AG. (collectively, "Volkswagen" or "Defendants").

2.      Plaintiff brings this action individually and on behalf of all others similarly situated and alleges upon personal knowledge, information, and belief that Defendants are liable to her and the Putative Classes under federal and state law for defective materials, workmanship, engineering, manufacturing, development, marketing, and sale of vehicles with a defective sticking Oil Separator which causes oil to leak from the upper timing covers, magnets, and oil level sensor (hereafter the "Oil Separator Defect").

3.      When the Oil Separator (otherwise referred to as the PCV Valve) fails due to its latent defect, the pressure in the oil system increases above specification causing multiple oil leaks and can lead to catastrophic damages such as oil pan and timing cover cracks.   Putative Class Members have experienced this issue. https://www.vwvortex.com/threads/cracked-oil-pan-issue.9543262/, last visited December 6, 2024.

4.      Repair of the Oil Separator, an engine component which is supposed to be durable and should last more than ten years and 100,000 miles, is a very expensive

repair costing more than $2,100 and upwards of 10% of the value of the Putative

Class Vehicle at the time of repair.

5.    Were a Putative Class member to not be advised timely by Defendants

of the Oil Separator Defect and pay out of pocket for a repair, the engine would

catastrophically fail and the vehicle would become undrivable and potentially cause

injury to occupants and the general public.

6.    Importantly, were a Putative Class member to be unaware (which most

are) of the need to repair and replace the Oil Separator, the Putative Class vehicle

becomes unreasonably dangerous and the engine could prematurely fail causing

serious injury.

7.    On November 22, 2024, Plaintiff provided notice to Defendants of their

violations of Alabama's Deceptive Trade Practices Act and their warranties.  Since

notice was provided, more than fifteen days have passed before Plaintiff filed her

Complaint.

8.    The Oil Separator is the same component across each Putative Class

Vehicle.  The Oil Separator is made of the same material, manufactured in the same

way, is supplied by the same supplier, and is defective in the same way across each

Putative Class Vehicle.

9.    Defendants received a benefit from the Plaintiff and Putative Class

**CLASS ACTION COMPLAINT**

Member's purchase of their Putative Class Vehicle because they profited from new Putative Class Vehicle purchases and by keeping the price of used Putative Class Vehicles high, Defendants were able to charge more for their new Putative Class Vehicles thereby increasing their profits.

10.    The Putative Class Vehicles at issue in this litigation include, but may not be limited to, all Volkswagen branded vehicles with model years 2018-2023 equipped with Defendants' 2.0L Four Cylinder Petrol Engine ("Putative Class Vehicles" or "Class Vehicles").[1]

11.    This action is brought to remedy violations of law in connection with Defendants' materials, workmanship, engineering, manufacturing, development, marketing, testing, durability, advertising, selling, warranting, and servicing of the Putative Class Vehicles.  The Putative Class Vehicles were all equipped by Defendants with the same Oil Separator, which has a serious latent defect that causes oil to leak from the engine creating low oil and a dangerous condition making the Putative Class Vehicles undrivable.

12.    No allegations of wrongdoing are alleged against any authorized dealer or other third-party not named in this Complaint as the wrongdoing related to the Oil

---

[1]    Discovery will enable Plaintiff to more precisely determine which models and model-years share the same uniform (and uniformly defective) Oil Separator.

Separator Defect lies entirely with Defendants.

13.    Defendants knew or should have known prior to Plaintiff's and the Putative Class's purchases that the Oil Separator was defective and would lead to the problems Plaintiff and Putative Class Members are experiencing.

14.    Defendants breached their implied warranties by continuing to sell the defective Putative Class Vehicles and refusing to remedy the issues; instead, Defendants actively concealed the defects from Plaintiff and the Putative Class Members.

15.    Defendants were also unjustly enriched at Plaintiff's expense by continuing to profit from the sale of goods with a known defect.  By fraudulently suppressing their knowledge of the issues with the Oil Separator on Putative Class Vehicles, Defendants violated Alabama, New Jersey's, and Virginia's state consumer protection laws and other common laws, as set forth herein.

## PARTIES

16.    Plaintiff Dagney Johnson Burt ("Plaintiff" or "Ms. Burt") is an adult resident and citizen of Jefferson County, Alabama.

17.    Defendant Volkswagen AG ("VAG") is a German corporation with its principal place of business in Germany.  It is therefore not a citizen of any state in the United States.

**CLASS ACTION COMPLAINT**

18.     Defendant Volkswagen Group of America, Inc. ("VWGOA") is a New Jersey corporation with its principal place of business in Virginia.  It is therefore a citizen of both New Jersey and Virginia.

19.     VWGOA is a wholly owned subsidiary of VAG.

20.     At all times relevant herein, VWGOA has been and has acted as an agent of VAG and was and is subject to VAG's control.

21.     Defendants engineered, manufactured, developed, marketed, distributed, sold, leased, and warranted the Putative Class Vehicles. Defendants also developed and disseminated the manuals, warranty booklets, advertisements, and promotional materials relevant hereto.

22.     At all times relevant herein, VAG (itself and through its related entities) engaged in the business of engineering, developing, and manufacturing the Putative Class Vehicles.

23.     Upon information and belief, VAG maintained final decision-making control over materials, workmanship, engineering, manufacturing, and development of the Putative Class Vehicles, including their defective powertrain and engine, and therefore is an essential party to this action concerning a defect in the Putative Class Vehicles' Oil Separator.

24.     Upon information and belief, VAG has, and at all relevant times had,

**CLASS ACTION COMPLAINT**

the contractual right to exercise, and in practice has exercised, control over VWGOA's work, including but not limited to the materials, workmanship, engineering, manufacturing, and development of Putative Class Vehicles, the manner of Putative Class Vehicles' marketing and advertisement, and representations made and facts withheld from consumers and the public about the Oil Separator Defect.

25.    Upon information and belief, VAG has been directly involved in assisting, directing, and controlling VWGOA, and VWGOA's authorized dealers' handling of Putative Class Member inquiries regarding the Defective Oil Separator.

26.    VAG has held VWGOA out as its agent for all purposes in the United States, especially for sales, warrantying, and marketing of Putative Class Vehicles and for ongoing management of relationships with purchasers and lessees of Putative Class Vehicles.

27.    VAG established VWGOA as its wholly-owned subsidiary company and ensured consumers would connect the companies through shared use of the official "Volkswagen" name and trademarks. It provided VWGOA with marketing and technical materials intentionally avoiding any distinction between VWGOA and VAG.

28.    VAG officially and publicly held out VWGOA as VAG's presence in

the United States for purposes of selling and leasing "Volkswagen" brand vehicles and providing related services.

29.     Because of the foregoing actions, representations, and omissions by Defendants regarding the Putative Class Vehicles, Plaintiff was injured because of her purchase of a defective Putative Class Vehicle.

## JURISDICTION AND VENUE

30.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one defendant, there are more than 100 Putative Class Members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

31.     This Court has personal jurisdiction over VWGOA because VWGOA is authorized to do business in this District, conducts substantial business in this District, and some of the actions giving rise to the complaint took place in this District.  Each of these facts independently, but also all of these facts together, are sufficient to render the exercise of personal jurisdiction by this Court over VWGOA permissible under traditional notions of fair play and substantial justice.

32.     This Court has personal jurisdiction over VAG because VAG has continuous and systematic business contacts in this District.

**CLASS ACTION COMPLAINT**

33.    By using VWGOA as its sole avenue for marketing, distributing, warranting, selling and leasing the VAG-engineered, manufactured, and developed Putative Class Vehicles in this District and the United States, VAG has deliberately taken affirmative steps to make VAG-engineered, manufactured, and developed Putative Class Vehicles available to consumers in this District and the rest of Alabama, including Putative Class Members; created continuing contact between VAG and residents of this District; and purposefully availed itself of the benefits and protections of conducting business in this District.

34.    Further, VWGOA is an agent of VAG, and by VWGOA acting as VAG's agent, such contacts by VWGOA are imputed to VAG.

35.    The foregoing allegations, when taken together, are sufficient to render the exercise of personal jurisdiction by this Court over each Defendant permissible under traditional notions of fair play and substantial justice.

36.    Venue is proper in this District under 28 U.S.C. § 1391(b) & (c) because Defendants, as corporations, are deemed to reside in any judicial district in which they are subject to personal jurisdiction.

## FACTS

A. **GENERAL FACTS**

37.    Each Putative Class Vehicle is a premium vehicle that comes with a

relatively high price tag in exchange for a vehicle that is superior to others in quality, safety, looks, drivability, efficiency, fit, and finish. Plaintiff and the Putative Class Members sought out the Putative Class Vehicles and purchased the Putative Class Vehicles intentionally after seeing and relying on Defendants' ads. The choice of Volkswagen vehicles with the 2.0 L Petrol Engine was no mistake—it was chosen for its supposed efficiency, smoothness, and reliability. Indeed, the 2.0L Petrol Engine with the Oil Separator is a very popular engine option and central to Defendants' brand.

38.    The efficiency, safety, and reliability of the Putative Class Vehicles is an important aspect of their overall value, is considered by first purchasers as well as secondary purchasers, and is a factor that determines whether a car will sell at fair market value or not. Due to the Oil Separator Defect, the Putative Class Vehicles fail to adhere to Defendants' own standards and are neither efficient, safe, nor reliable.

39.    The Oil Separator Defect has affected the resale and buyback value of the Putative Class Vehicles. Defendants recognize this when they offer lower values for buybacks and secondary purchases of Putative Class Vehicles as compared to similar models with engines not affected by the Oil Separator Defect.

40.    Defendants knew or should have known, prior to marketing and selling

**CLASS ACTION COMPLAINT**

the Putative Class Vehicles to Plaintiff and the Putative Class Members, of the Oil Separator Defect. Yet, Defendants continued to sell the Putative Class Vehicles with the hope that Putative Class Members would not experience the Oil Separator Defect within the applicable warranty period.

41.     Notwithstanding this long-known problem and extensive knowledge of the issue prior to Plaintiff's purchase, Defendants continued to advertise and sell the Putative Class Vehicles and failed to replace the Oil Separator with a non-defective component, even in new models. Defendants knowingly failed to provide truthful information about the defects present to consumers.

42.     Defendants benefited from each of Plaintiff's and the Putative Class Members' purchases of their Putative Class Vehicles. Each purchase of a Putative Class Vehicle provided either direct or indirect revenue to Defendants, through either a direct purchase through an authorized dealer of new, CPO, or other used cars or through increasing original sale prices by perpetuating a strong market for used Volkswagen vehicles.

43.     Defendants received direct revenue from the sale of new and/or Certified Pre-Owned ("CPO") vehicles to Putative Class Members. A CPO vehicle is a used car that Defendants have represented that they inspected to ensure maintained Volkswagen quality, the purchase of which comes with a CPO Warranty

from Defendants.  This extended warranty would normally be unavailable on used cars and allows Defendants to sell CPO vehicles for higher prices and gain direct revenue from the sale of the CPO Warranty, increasing revenue.  Thus, purchasers of CPO vehicles, including some Putative Class Members, provide a direct financial benefit to Defendants.

44.    For each Putative Class Vehicle, Defendants issued an express warranty which covered the vehicle, including but not limited to, the Oil Separator, warranting it to be free of defects in materials and workmanship at the time of purchase or lease.

45.    Defendants sold or leased the Putative Class Vehicles under implied warranties of merchantability. Defendants impliedly warranted the Putative Class Vehicles to be merchantable and fit for the ordinary purposes for which they were intended to be used, including the guarantee that they were in a non-defective condition for use by their owners or lessees for the ordinary purpose for which they were intended and were not otherwise injurious. Defendants are under a duty to engineer, manufacture, develop, construct, inspect, and test the Putative Class Vehicles to make them suitable for the ordinary purposes of their use.  They failed that duty.

46.    Defendants breached their warranties for the Putative Class Vehicles because of the latent defect with the Oil Separator. Defendants breached their

**CLASS ACTION COMPLAINT**

warranties by failing to repair the Oil Separator as warranted, and otherwise continuing to use the defective Oil Separator on their vehicles.

47.    In breach of Defendants' warranties, the Putative Class Vehicles are defective, unfit for the ordinary purposes for which they are intended to be used, unsafe, and not merchantable.

48.    All Volkswagen vehicles, including all of the Putative Class Vehicles, come with a comprehensive Owner's Manual or Operator's Manual ("Manual"). These are lengthy booklets that are usually located within a vehicle's glove compartment or other storage compartment.  These booklets contain information regarding the vehicle including operation, care, maintenance, safety features, technical information, and other important information pertaining to all aspects of the vehicle.

49.    Defendants encourage all Volkswagen vehicle owners to read the Manual to help familiarize them with their vehicle. Defendants further advise vehicle owners that failure to abide by instructions and warnings in the Manual can result in damage to the vehicle and result in denial of warranty coverage. Defendants consider the Manual part of the vehicle.

50.    The Manual contains important information about the vehicle warranty and specifically states that the applicable terms of the warranty for each vehicle are

**CLASS ACTION COMPLAINT**

found in the Service and Warranty booklet.

51. The Manual instructs vehicle owners to use genuine Volkswagen parts that are supposedly subject to strict quality control.

52. Significantly, the Manual instructs vehicle owners to visit the Volkswagen website for more information on their vehicles thereby incorporating the information contained on the website into the Manual provided to all Putative Class Members. The Manual is also readily available online.

## B. Plaintiff Burt's Facts

53. In November 2022, Plaintiff Dagney Burt purchased new a Volkswagen Atlas (2.0L), Vehicle Identification No. 1V2DP2CAXPC518766 from an authorized Volkswagen dealership in Birmingham, Alabama.

54. At the time Ms. Burt purchased her vehicle, it was new and Defendants derived a benefit from the sale of the new vehicle to her.

55. One of the main and important reasons for Ms. Burt selecting her Putative Class Vehicle was its 2.0L Petrol Engine which was advertised by Defendants as efficient, safe, and reliable.

56. Her Putative Class Vehicle contained the latently defective Oil Separator at issue.

57. Prior to her purchase, Ms. Burt saw Volkswagen's newspaper,

**CLASS ACTION COMPLAINT**

magazine, social media, in store, and television ads touting that the new, certified pre-owned, and used Putative Class Vehicles were reliable, durable, safe, efficient, of high fit and exceptional quality, and that they were premium products. Ms. Burt relied on Defendants' representations in making her purchase.

58.     Ms. Burt's Putative Class Vehicle Oil Separator has not been altered or changed in any way from when it left the control of Defendants.

59.     Ms. Burt purchased her Putative Class Vehicle for her personal, family, and household use and on most days and nights stores it safely and purposefully either outside her home or inside her garage.

60.     Ms. Burt expected her Putative Class Vehicle to be of good and merchantable quality, materials, and workmanship and not defective. She had no reason to know, or expect, that the Oil Separator was defective.

61.     Ms. Burt does not have any expertise or special skill in automobile manufacturing. Had she known that the Oil Separator was defective, she would not have bought her Putative Class Vehicle or would have paid less for it.

62.     In the warranty booklet provided to Ms. Burt, Defendants represented that her Putative Class Vehicle was free of defects.

63.     Ms. Burt first became aware of the Oil Separator Defect on or about November 6, 2024 when she was quoted more than $2,100 to repair and replace the

defective Oil Separator.  *See* Exh. A.

64.    Defendants denied Ms. Burt's request to repair and replace the defective Oil Separator with a non-defective Oil Separator at their cost and at no cost to Ms. Burt.

65.    Ms. Burt's vehicle is just one of thousands of Putative Class Vehicles that have the Oil Separator Defect which renders the Putative Class Vehicles unsafe, unfit for the ordinary purpose of driving, defective, unreliable, and worth less than it should be.

## C. DEFENDANTS' MARKETING AND CONCEALMENT

66.    Defendants manufactured and sold the Putative Class Vehicles with the Oil Separator Defect while willfully concealing the true inferior quality and sub-standard safety, reliability, and efficiency of the Putative Class Vehicles' engine.

67.    Defendants directly market the Putative Class Vehicles to consumers *via* extensive nationwide, multimedia advertising campaigns on television, the Internet, billboards, print publications, mailings, and through other mass media.

68.    Defendants advertised the Class Vehicle's 2.0L engine as one that "balances efficiency and power."  It then gives very specific details about the engine touting its lightweight and modern technology.  Defendants' successful marketing affords them a substantial price premium for their vehicles compared to their non-

**CLASS ACTION COMPLAINT**

premium competitors.

69.     Defendants spend billions of dollars on a highly sophisticated, uniform, and continuous media campaign to ensure consumers know Volkswagen is a premium brand whose 2.0L engines are safe, reliable, and efficient.  They do so on the premise that their vehicles have better reliability, safety, performance, drivability, fit, and finish than other brand vehicles. The marketing is deliberate, precise, and effective. Defendants' marketing is comparative in nature and designed to create the impression that the Putative Class Vehicles are superior to their competitors and non-premium vehicles, and they do so using subtle, specific language that leads consumers to draw comparisons between Volkswagen and non-premium brands.

70.     Although Defendants knew or should have known of the Oil Separator Defect, it failed to notify Plaintiff and Putative Class Members of this prior to their purchase of the vehicles all the while communicating the opposite to the Putative Class.

71.     With respect to CPO vehicles, Defendants advertise their CPO vehicles as "Certified Pre-Owned, More than a used car." They tout the many "benefits" of a CPO Volkswagen over a "used" car included extended warranty coverage and a "100+ Point Dealer Inspection."

**CLASS ACTION COMPLAINT**

72.    Defendants go further and expressly describe their CPO Vehicles as reliable for the "long haul."  As part of Defendants CPO advertising they also describe their vehicles as "quality" and put through a "comprehensive dealer inspection to ensure it meets VW standards."  Finally, they advertise that a CPO Volkswagen should ensure "confidence in the journey ahead."  Each of these assertions are false as they relate to the Putative Class Vehicles.

73.    As a result of Defendants affirmative marketing and failure to disclose the known defect, Plaintiff and Putative Class Members formed a reasonable belief and expectation that the 2.0L Petrol Engine in the Putative Class Vehicles was of high quality, would endure, was safe, was reliable, and would positively impact resale value of the vehicles and would not fail under normal circumstances.

74.    Plaintiff and Putative Class Members justifiably relied on this reasonable belief and Defendants' misleading marking that concealed the Oil Separator Defect when they purchased or leased their Putative Class Vehicles.

75.    Plaintiff and the Putative Class, in deciding to purchase the Putative Class Vehicles, also reasonably relied upon Defendants to inform the public and potential purchasers of Volkswagen cars of any defects in the Putative Class Vehicles, including defects in the Oil Separator.

76.    Defendants' failure to inform Plaintiff and Putative Class Members of

**CLASS ACTION COMPLAINT**

the defect has caused Plaintiff and Putative Class Members harm.

**1. Defendants Knew Or Should Have Known Of The Oil Separator Defect Prior To Sale Or Lease Of The Putative Class Vehicles.**

77.    Defendants knew or should have known of the defects with the Oil Separator installed in Putative Class Vehicles. Defendants knew or should have known of these defects at the time they advertised and sold the Putative Class Vehicles and thereafter when they continued to disseminate information about the vehicles for Plaintiff and those Putative Class Members who purchased their Putative Class Vehicles on the primary and secondary markets.

78.    At all relevant times, the defects in the Oil Separator that Defendants knew or should have known about included—but were not limited to—defects in the manufacture, process, materials, and workmanship of the vehicle. Defendants failed to inform Plaintiff and the Putative Class Members about the defects, and the defects have reduced the vehicle's value.

79.    Prior to implement a new engine and powertrain system in a vehicle, automakers such as Defendants typically employ multiple standards and test protocols to ensure long life and film integrity of main component of the vehicle, the powertrain system. In addition to extensive failure testing and analysis of powertrain components, including specifically the Oil Separator, there is additional aggressive testing prior to the qualification of the powertrain to ensure it will endure. These

tests often run over the course of two-to-five years before a powertrain is brought to market.

80.     Most of these test procedures are developed and standardized by the American Society for Testing and Materials ("ASTM") and the Society of Automotive Engineers ("SAE"), and typically include the following:

      a)  physical and mechanical tests, including flexibility, impact resistance, abrasion resistance, scratch and mar resistance, coating thickness, adhesion, and hot and cold cycling; and

      b)  chemical properties testing, including resistance to solvents, chemicals, and various fluids the vehicle will likely encounter in the open environment.

81.     It is believed that Defendants performed several of the above-described ASTM and SAE test procedures. In addition, Defendants have developed what is referred to as "Volkswagen Standards Testing" that are used in connection with the testing of their vehicles. https://atslab.com/automotive-testing/volkswagen-standards-testing/, last visited December 6, 2024.

82.     The development of the 2.0L Petrol Engine, including the testing performed in connection therewith, would have revealed the Oil Separator Defect. The details regarding the testing performed by Defendants and the results of that

testing are in the exclusive custody and control of Defendants.

83.     As far back as 2013, Defendants publicly tout their "rigorous materials and component specifications" testing: "Charlie Lin, Quality Laboratory Manager at Volkswagen's production facility at Chattanooga, Tennessee, informed that the company has rigorous materials and component specifications relating to vehicle components." https://www.azom.com/article.aspx?ArticleID=8126, last visited December 6, 2024.

84.     As it relates to new materials and components, Defendants admit that they "employ testing practices to determine why there is a variation in values from those provided by suppliers. Test throughput levels are emphasized to facilitate timely responses to production and design teams alike." *Id*.

85.     Upon information and belief, prior to the manufacture and sale of the Putative Class Vehicles, Defendants knew or should have known of the Oil Separator Defect through, or as evidenced by, sources such as pre-release materials, workmanship, engineering, manufacturing, development, and testing information; technical service bulletins; service center data; early consumer complaints made directly to Defendants and/or posted on public online vehicle-owner forums; testing done, including testing in response to consumer complaints; aggregate data from Volkswagen dealers; and other internal sources unavailable to Plaintiff and Putative

Class Members without discovery.

**2. Defendants Knew Or Should Have Known Of The Oil Separator Defect From Putative Class Member Complaints Made Directly To Defendants.**

86.    Defendants knew or should have known about the Oil Separator Defect based on complaints made directly to them. The large number of complaints, and the consistency of their descriptions of oil loss and engine failure attributed to a single uniform part (Oil Separator), alerted Defendants to this substantial defect affecting one of the most popular and highest-selling vehicle features.

87.    Information as to the full extent of complaints made directly to Defendants about the Oil Separator Defect is information presently in the exclusive custody and control of Defendants and is not available to Plaintiff prior to discovery.

88.    However, many Putative Class Vehicle owners complained directly to Defendants and Volkswagen dealerships about the Oil Separator Defect issues they experienced. The number and consistency of these complaints should have alerted Defendants to the existence of the Oil Separator Defect.

**3. Defendants Knew Or Should Have Known Of Oil Separator Defect From Repair Data.**

89.    Defendants also knew or should have known about the Oil Separator Defect because of the large number of inquiries regarding replacement/repair on Putative Class Vehicles.

90.    Defendants collect, review, and analyze detailed information about repairs made on vehicles at their dealerships and service centers, including the type and frequency of such repairs. Complete data on such repairs is exclusively within Defendants' control and unavailable to Plaintiff prior to discovery.

### 4.  <u>Defendants Knew Or Should Have Known Of The Oil Separator Defect Based On Putative Class Member Complaints On Public Online Forums.</u>

91.    In addition to complaints made directly to Defendants, many Putative Class Members and owners posted complaints about the Oil Separator Defect on public online vehicle-owner forums. *See*, *infra*, for examples.

92.     As shown by this small sampling of complaints from forums and websites (which are monitored by Defendants), consumers have been vocal in complaining about the Oil Separator Defect and the damage it has caused for years. A multi-billion-dollar company devoted to vehicle materials, engineering, manufacturing, and development such as Defendants undoubtedly tracks and has tracked such sites and was aware or should reasonably have been aware of the Oil Separator Defect in the Putative Class Vehicles.

93.    The following are screen captures of various complaints and articles made on forums and online magazines dedicated to discussion of Volkswagen vehicles:

**CLASS ACTION COMPLAINT**



https://atslab.com/automotive-testing/volkswagen-standards-testing/





**Leah Lopez**
Oh my goodness yes! Major oil leak on my 2022 atlas. Oil pump separator failed and
timing cover needs to be replaced. Really!? Why am I having to replace this on a 2022!
Over 2,000 in repairs and that's not counting that my check engine light is on for
another thing that already failed.

4h    Like    Reply    Share

https://www.facebook.com/groups/191339898236209/search/?q=oil%20separator



https://www.vwvortex.com/threads/2020-oil-leak.9412537/

# Volkswagen Oil Leak Problems Stem from PCV Valve Issues, Which is a Cheap Fix to Solve

Cameron Aubernon | Apr 15, 2022 

Thanks to 'Dieselgate,' Volkswagen's shift towards full electrification is swiftly underway. Until the day the last internal combustion engine VW rolls off the line, though, the German company still has a few oily bugs to sort out on its older models.



## Key Points

- Among the main culprits for oil leaks in VW vehicles are valve cover gaskets and camshaft chain tensioner gaskets linked to blocked positive crankcase ventilation (PCV) systems in older Volkswagens.

- The PCV valve (otherwise known as an oil/air separator) in Volkswagens undergo constant strain while regulating vacuum pressure, wearing out the internals in the long run.

https://www.vehiclehistory.com/articles/volkswagen-oil-leak-problems-stem-from-pcv-valve-issues-which-is-a-cheap-fix-to-solve



https://www.vwatlasforum.com/threads/oil-leaked-out-of-atlas.6988/

94.    The 2.0L Petrol Engine at issue is related to a prior engine version which experienced a similar defect with its Oil Separator and thus Defendants should

**CLASS ACTION COMPLAINT**

have been on notice of this defect even before they began selling the Putative Class

Vehicles:



https://atslab.com/automotive-testing/volkswagen-standards-testing/

**CLASS ACTION COMPLAINT**



https://www.youtube.com/watch?v=V45DKxiLsRg

# Positive Crankcase Ventilation Clogs Lead to Leaky Volkswagens and Rough Idling

A common cause of oil leaks in Volkswagen models from the 2010s and earlier comes from blown valve cover and camshaft chain tensioner gaskets.

According to reports made to *Repair Pal* about the Passat, repairing the oil leaks through the dealership or certain garages have run into the thousands of dollars.

How did the gaskets get blown, though? The common culprit, per *FCP Euro*, is the positive crankcase ventilation (PCV) valve, otherwise known as the air/oil separator valve. Issues linked to the PCV include vacuum leaks, rough idling, and oil leaks from the rear main seal.

According to the *FCP Euro* site, "the constant strain of regulating the vacuum in modern engines wears at the internals of the PCV system, leading to a variety of different symptoms of varying degrees of severity."

Reportedly, the issue generally appears between 60,000 to 80,000 miles and affects VW models like the 2013–2017 Beetle, 2014–2017 Passat, and various 2015–2018 Golfs.



**CLASS ACTION COMPLAINT**

https://www.vehiclehistory.com/articles/volkswagen-oil-leak-problems-stem-from-pcv-valve-issues-which-is-a-cheap-fix-to-solve

95.    In sum, Defendants have actively concealed the existence and nature of the latent defects with the Oil Separator from Plaintiff and the Putative Class Members since at least early 2010 despite their knowledge of the existence and pervasiveness of the Oil Separator Defect, and certainly well before Plaintiff and the Putative Class Members purchased their Putative Class Vehicles.  Specifically, Defendant has:

   a)  failed to disclose, at and after the time of purchase, lease, and/or service, any and all known material defects of the Putative Class Vehicles, including the Oil Separator Defect;

   b)  failed to disclose, at and after the time of purchase, lease, and/or service, that the Oil Separator in the Putative Class Vehicles was defective and not fit for its intended purposes;

   c)  failed to disclose, and actively concealed, the fact that the Oil Separator used on the Putative Class Vehicles was defective, despite the fact that Defendants learned of the defect as early as 2010, and likely even

earlier;

d) failed to disclose, and actively concealed, the existence and pervasiveness of the Oil Separator Defect even when directly asked about it by Putative Class Members during communications with Defendants, Defendants' Customer Assistance, Volkswagen dealerships, and Defendants' service centers;

e) actively concealed the Oil Separator Defect by refusing to replace the defective Oil Separator for Putative Class Members when informed of defect.

## D. PLAINTIFF AND PUTATIVE CLASS MEMBERS WERE DAMAGED BY THE OIL SEPARATOR DEFECT

96.    Plaintiff and the Putative Class Members purchased or leased the Putative Class Vehicles based on their reasonable but mistaken belief that their Putative Class Vehicles were of high quality, durable, and free of defects. However, the Putative Class Vehicles delivered by Defendants were not those for which Plaintiff and the Putative Class Members bargained. Rather, the Putative Class Vehicles suffered from a common defect—the Oil Separator Defect. Had Plaintiff and the Putative Class Members known of the Oil Separator Defect, they would have either: (a) paid substantially less for the Putative Class Vehicles; (b) required an immediate remedy that restored the Putative Class Vehicles to the conditions

bargained for; or (c) not purchased or leased the Putative Class Vehicles.

97.    Because of the disparity between the quality of the Putative Class Vehicles negotiated for and the Putative Class Vehicles actually received, Plaintiff and the Putative Class Members suffered economic harm.

98.    This economic harm can be quantified as: (a) the economic value of an effective remedy that restores the Putative Class Vehicles to their expected conditions (or the economic harm from the lack of an adequate remedy); (b) the discount that Plaintiff and the Putative Class Members would have required to accept the Putative Class Vehicles in their actual condition; and/or (c) the diminished value of the Putative Class Vehicles, both those that have had their Oil Separator repaired or replaced and those that have not.

99.    As described above, Defendants' CPO program requires a 100 Point Check, which includes powertrain components.  Thus, Defendants should not have certified for sale a Putative Class Vehicle in which the defect was present and not repaired.

100.    Kelley Blue Book ("KBB") similarly bases its appraisals on the condition of the vehicle. KBB divides the condition of used vehicles into the following four grades:

> **Excellent** condition means that the vehicle looks new, is in ***excellent mechanical condition*** and needs no reconditioning. This

vehicle has never had any paint or body work and is free of rust. The vehicle has a clean Title History and will pass a smog and safety inspection. The ***engine compartment is clean, with no fluid leaks*** and is free of any wear or visible defects. The vehicle also has complete and verifiable service records. Less than 5 percent of all used vehicles fall into this category.

**Good** condition means that the vehicle is ***free of any major defects***. This vehicle has a clean Title History, the paint, body and interior have only minor (if any) blemishes, and there are ***no major mechanical problems***. There should be little or no rust on this vehicle. The tires match and have substantial tread wear left. A "good" vehicle will need some reconditioning to be sold at retail. Most consumer owned vehicles fall into this category.

**Fair** condition means that the ***vehicle has some mechanical*** or cosmetic defects and needs servicing but is still in reasonable running condition. This vehicle has a clean Title History, the paint, body and/or interior need work performed by a professional. The tires may need to be replaced. There may be some repairable rust damage.

**Poor** condition means that the vehicle has ***severe mechanical and/or cosmetic defects*** and is in poor running condition. The vehicle may have problems that cannot be readily fixed such as a damaged frame or a rusted-through body. A vehicle with a branded title (salvage, flood, etc.) or unsubstantiated mileage is considered "poor." A vehicle in poor condition may require an independent appraisal to determine its value. (emphasis added)

The vehicle's powertrain, including its engine and components, has a substantial effect on resale value and, by nature and available valuation scales, the presence of the Oil Separator Defect degrades the value of a car that is otherwise in "excellent" or "good" condition down to "fair" condition.

101.  Plaintiff and the Putative Class Members paid premiums to purchase and lease the Putative Class Vehicles as a result of the brand, safety,, quality, durability, and value representations made by Defendants. A vehicle purchased or leased with the reasonable expectation that it is of high quality and durable as advertised is worth more than a vehicle known to be subject to the problems and defects associated with the Oil Separator.

102.  Plaintiff and the Putative Class Members were harmed from the day they drove their Putative Class Vehicles off the lot because they did not get what they paid for—a high-quality and durable vehicle that would retain its value under normal conditions and it was actually a vehicle in "Fair" or worse condition.

103.  As a direct result of Defendants' misrepresentations and omissions, Plaintiff and the Putative Class Members overpaid for their Putative Class Vehicles and did not receive the benefit of their bargain. Plaintiff and the Putative Class Members paid a premium for the Putative Class Vehicles that contained a known but concealed defect. Defendants were unjustly enriched because they obtained and retained monies paid by Putative Class Members who paid a price for the Putative Class Vehicles that was higher than the value of the vehicles they received in return.

104.  In addition, as a result of the disclosure of the Oil Separator defect the value of the Putative Class Vehicles has decreased, and, therefore, Plaintiff and the

**CLASS ACTION COMPLAINT**

Putative Class Members have suffered a direct pecuniary loss in the form of the decreased value of their Putative Class Vehicles, even when the Oil Separator Defect has not yet manifested.

105.  Because of Defendants' unfair, deceptive, and/or fraudulent business practices, and their failure to disclose the Oil Separator Defect and the problems associated therewith, owners and lessees of the Putative Class Vehicles have suffered losses in money and/or property.

106.  Plaintiff and the other Putative Class Members were injured as a result of Defendants' conduct in that Plaintiff and the other Putative Class Members overpaid for their Putative Class Vehicles and did not receive the benefit of their bargain, and their Putative Class Vehicles have suffered a diminution in value, whether the Oil Separator is repaired or replaced or not. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

E.  FRAUDULENT CONCEALMENT FACTS DETAILED

107.  Absent discovery, Plaintiff is unaware of, and unable through reasonable investigation to obtain, the names and identities of those individuals at Defendants' responsible for disseminating false and misleading marketing materials and information regarding the Putative Class Vehicles. Defendants necessarily are in possession of, or has access to, all this information. Plaintiff is, however, able to

provide sufficient specificity on the concealment, as set forth herein.

108.    Defendants owed a duty to Plaintiff and the Putative Class Members to disclose to them what was known about the Oil Separator Defect as soon as it became known to Defendants. Defendants knew or should have known that Plaintiff and the Putative Class Members chose the Volkswagen brand intentionally and with the purpose of using their premium vehicles. Because of the long-standing reputation of high quality established by Volkswagen, Defendants were on notice that the Plaintiff and the Putative Class Members expected certain qualities from the powertrain.

109.    Plaintiff's claims arise out of Defendants' fraudulent concealment of the Oil Separator Defect and the oil leaks and ultimate engine failure it causes, and Defendants' representations about the safety, quality, durability, reliability, efficiency, and value of the Putative Class Vehicles.

110.    To the extent that Plaintiff's claims arise from Defendants' fraudulent concealment, there is no one document or communication, and no one interaction, upon which the Plaintiff and Putative Class Members base their claims. Plaintiff alleges that at all relevant times, including specifically at the time she purchased her Putative Class Vehicle, Defendants knew, or were reckless in not knowing, of the Oil Separator Defect; Defendants were under a duty to disclose the Oil Separator Defect based upon their exclusive knowledge of it, their affirmative representations

about it, and their concealment of it. Defendants never disclosed the Oil Separator

Defect to Plaintiff or the public at any time or place or in any manner.

**1. <u>Defendants' Duty To Disclose The Known Defect</u>**

111.   The particular circumstances of this case gave rise to a duty for

Defendants to disclose the Oil Separator Defect to Plaintiff and Putative Class

Members. As noted above, the Plaintiff (and the Putative Class) does not have any

expertise or specific knowledge of powertrain technology or components. On the

other hand, Defendants have superior and extensive knowledge and expertise

concerning the subject Oil Separator. Defendants have manufactured and sold

vehicles with the same Oil Separator (or a very similar one) for decades, which gives

them expertise and asymmetric knowledge of Oil Separator materials and

workmanship as compared to Plaintiff.

112.   Further, Plaintiff has no expertise in powertrain manufacturing and she

reasonably relied on Defendants (with their significant expertise in the manufacture

and installation of the Oil Separator) and their representations about the powertrain.

Defendants were required to, and had a duty to, disclose their full knowledge on that

subject, which included their knowledge of the Oil Separator Defect.

113.   Defendants intended for Plaintiff and Putative Class Members to rely

on Defendants' advertising and premium reputation.  They were aware that Plaintiff

**CLASS ACTION COMPLAINT**

and Putative Class Members lacked expertise and would be unable to obtain any information related to the Oil Separator Defect unless the Defendants provided the information, as it was in Defendants' exclusive control.

## 2. <u>Who, What, When, Where, How, And Why of Fraudulent Concealment</u>

114.   Plaintiff makes the following specific fraud allegations with as much specificity as possible although they do not have access to information necessarily available only to Defendants, and Plaintiff further incorporate by reference all statements relied on by Plaintiff as alleged above:

a) ***Who***: Defendants actively concealed the Oil Separator Defect from Plaintiff and the Putative Class Members while simultaneously touting the quality, safety, reliability, efficiency, and durability of the Putative Class Vehicles, as alleged, *supra*.  Plaintiff is unaware of, and therefore unable to identify, the true names and identities of those specific individuals at Defendants responsible for such decisions but, upon information and belief, understand them to be employees within the sales and marketing division of Defendants.  The engineering division of Defendants would have reviewed the sales and marketing material and signed off on each slogan and advertisement thus implicating the engineering division as well.

**CLASS ACTION COMPLAINT**

b) **What**: Defendants knew, or were reckless or negligent in not knowing, that the Putative Class Vehicles contain the Oil Separator Defect, as alleged, *supra*. Defendants concealed the Oil Separator Defect and made contrary representations about the quality, safety, reliability, efficiency, and durability, and other attributes of the Putative Class Vehicles, as alleged, *supra*.

c) **When**: Defendants concealed material information regarding the Oil Separator Defect at all times and made representations about the quality and durability of the Putative Class Vehicles, starting no later than 2010, or at the subsequent introduction of certain year models of Putative Class Vehicles to the market, continuing through the time of sale/lease, and on an ongoing basis, and continuing to this day, as alleged, *supra*. Defendants have not disclosed the truth about the Oil Separator Defect in the Putative Class Vehicles to anyone outside of Defendants. Defendants have never taken any action to inform consumers about the true nature of the Oil Separator in Putative Class Vehicles. And when consumers brought their Putative Class Vehicles to Defendants complaining that they had experienced low oil or engine failure in their Putative Class Vehicles, Defendants denied any

knowledge of, or responsibility for, the Oil Separator Defect.

d) *Where*: Defendants concealed material information regarding the true nature of the Oil Separator Defect in every communication they had with Plaintiff and the Putative Class Members and made contrary representations about the quality and durability of the Putative Class Vehicles. Plaintiff is aware of no document, communication, or other place or thing in which Defendants disclosed the truth about the Oil Separator Defect in the Putative Class Vehicles to anyone outside of Defendants. Such information is not disclosed in any sales documents, displays, advertisements, warranties, owner's manual, or on Defendants' website—despite the fact that Defendants knew, or should have known, of the defect prior to customers purchase of the Putative Class Vehicles.

e) *How*: Defendants concealed the Oil Separator Defect from Plaintiff and the Putative Class Members and made representations about the quality, safety, reliability, efficiency, and durability of the Putative Class Vehicles. Defendants actively concealed the truth about the existence and nature of the Oil Separator Defect from Plaintiff and the Putative Class Members at all times, even though it knew or should have known

**CLASS ACTION COMPLAINT**

about the Oil Separator Defect and knew that information about the Oil Separator Defect would be important to a reasonable consumer. Defendants also promised in their marketing materials that the Putative Class Vehicles have qualities that they do not have.

f) *Why*: Defendants actively concealed material information about the Oil Separator Defect in Putative Class Vehicles for the purpose of inducing Plaintiff and the Putative Class Members to purchase or lease Putative Class Vehicles, rather than purchasing or leasing competitors' vehicles and made representations about the quality and durability of the Putative Class Vehicles. Had Defendants disclosed the truth, for example in their advertisements or other materials or communications, Plaintiff (and reasonable consumers) would have been aware of it and would not have bought the Putative Class Vehicles or would have paid less for them.

115. Had Defendants disclosed the Oil Separator Defect to Plaintiff and the Putative Class Members prior to sale, either directly or indirectly by placing Plaintiff and Putative Class Members in a position to learn of the defect, they would not have been damaged. Armed with knowledge of the defect, the Plaintiff and Putative Class Members would either have paid less for their Putative Class Vehicle or wouldn't

**CLASS ACTION COMPLAINT**

have purchased one.

## CLASS ACTION ALLEGATIONS

116.   Plaintiff brings this action on behalf of herself and all others similarly situated as a class action pursuant to Federal Rule of Civil Procedure 23.  The Classes which Plaintiff seeks to represent are composed of and defined as (collectively "Classes" or "Putative Class"):

    a)  By Plaintiff Burt, a Putative Class of all consumers who purchased or leased a Putative Class Vehicle in the United States (the "Putative National Class").

    b)  By Plaintiff Burt, a Putative Subclass of all consumers who purchased or leased a Putative Class Vehicle in Alabama (the "Putative Alabama Subclass").

117.   The following persons are excluded from the definition of the Putative Class:

    a)  U.S. District Court judges, magistrate judges of any U.S. District Court, judges of the U.S. Court of Appeals for the Eleventh Circuit, and U.S. District Court personnel having any involvement with administration and/or adjudication of this lawsuit;

    b)  Class counsel and their employees; and

c) Employees of Defendants.

118.    Plaintiff brought this action, which may properly be maintained as a class action pursuant to the provisions of the Federal Rules of Civil Procedure, and alleges as follows:

    a) Members of the Putative Class are geographically distributed throughout the United States and far exceed 10,000 in total so that their joinder is impractical;

    b) Common questions of law or fact exist as to all Members of the Putative Class and predominate over any questions affecting only individual Putative Class Members and include, but are not limited to:

        a.  Whether the Oil Separator is defective;

        b.  Whether Defendants knew or should have known the Oil Separator is defective;

        c.  Whether Defendants unlawfully misrepresented the quality of their product;

        d.  Whether Defendants intentionally misrepresented the quality of their product;

        e.  Whether Defendants were unjustly enriched as a result of their deceptive sales practices;

**CLASS ACTION COMPLAINT**

f.  Whether Defendants' conduct violated state statutes in Alabama, New Jersey, and Virginia;

g.  Whether Plaintiff and Putative Class Members are entitled to damages and the proper measure of any such damages;

h.  Whether Plaintiff and Putative Class Members are entitled to an award of attorneys' fees, pre-judgment interest, and costs of this suit;

i.  Whether Plaintiff and Putative Class Members are entitled to injunctive relief; and

j.  Such other common factual and legal issues as are apparent from the allegations and causes of action alleged herein;

c)  Plaintiff's claims are typical of the claims of the members of the Putative Class under Federal Rule of Civil Procedure 23. Each member of the Putative Class either owns, owned, leases, or leased a Putative Class Vehicle;

d)  Plaintiff will fairly and adequately protect the interests of the Putative Class as required by Federal Rule of Civil Procedure 23 and has no interests that are adverse to the interests of the Putative Class. She has retained counsel who have substantial experience in the prosecution of

**CLASS ACTION COMPLAINT**

class actions;

e)  The prosecution of separate actions by individual Members of the Putative Class would create the risk of (i) inconsistent or varying adjudications with respect to individual Members of the Putative Class that would establish incompatible standards of conduct for Defendants; or (ii) adjudications with respect to individual Members of the Putative Class that would, as a practical matter, be dispositive of the interest of the other Members not parties to the adjudication or would substantially impair or impede their ability to protect their interest. By contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves the resources of the parties and the court system, and protects the rights of each Putative Class Member. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy under Federal Rule of Civil Procedure 23;

f)  Pursuant to Federal Rule of Civil Procedure 23(b)(2), Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the Putative Class, causing injury to them and making Class-wide relief appropriate, specifically declaratory and injunctive relief; and

g) The harm suffered by many individual Members of the Putative Class may not be great enough to warrant the expense and burden of individual litigation, which would make it difficult or impossible for individual Members of the Class to redress the wrongs done to them.

## CAUSES OF ACTION

### COUNT ONE
### BREACH OF EXPRESS WARRANTY
### (BY ALL PLAINTIFFS ON BEHALF OF ALL PUTATIVE CLASSES)

119.   Plaintiff, individually and for the Putative Class, hereby incorporates each and every allegation set forth above as though fully set forth herein.

120.   Plaintiff experienced a defect in and failure of the Oil Separator on the Putative Class Vehicles. Plaintiff reported this issue to Defendants through written pre-suit notice.  Plaintiff also notified an authorized Volkswagen dealer of the defect.

121.   VWGOA is the entity that has issued and is responsible for performing on the terms of the New Vehicle Limited Warranty to Volkswagen customers.

122.   In connection with the purchase or lease of new Volkswagen vehicles, VWGOA provided an express warranty for a period of 4 years or 50,000 miles, whichever occurs first.

123.   In connection with the sale of Certified Pre-Owned Volkswagens vehicles at authorized dealers, VWGOA promises to honor the full warranty for any

remaining portion of the warranty period, and additionally provides vehicle coverage for another 12 months or 12,000 miles or 24 months or 24,000 miles, whichever comes first.

124.  VWGOA's express warranty, by its terms, applies not only to the original owner, but also to each subsequent owner of a covered vehicle.

125.  This warranty covers any repairs needed to correct defects in materials and workmanship of all parts and components of each new Volkswagen vehicle subject to the exclusions listed.

126.  Most if not all evidence, proof, or information about the existence of a defect causing or contributing to cause the Oil Separator defect is within the exclusive possession and control of Defendants.

127.  In response to claims by Plaintiff seeking warranty coverage for her defective Oil Separator, Volkswagen representatives at authorized dealers refused to repair or replace the Oil Separator at no cost to her.

128.  Plaintiff maintains and alleges based upon the facts and information available to her, without the benefit of discovery, that a cause of her defective Oil Separator is a manufacturing defect, or a defect in the materials or workmanship of the Oil Separator.

129.  The owners' manuals for each of the Putative Class Vehicles says

nothing about the propensity of the Oil Separator to fail and offers no warnings or cautions that this might occur. Rather, the Oil Separator is a defective, unintended feature or propensity that plausibly results from a manufacturing defect, a defect in materials or workmanship, or some combination of all of those.

130.    VWGOA provided all purchasers and lessees of the Class Vehicles with the express warranties described herein, which became part of the basis of the bargain when customers purchased Volkswagen vehicles. Accordingly, VWGOA's warranties are express warranties under the laws of each state.

131.    VWGOA breached these warranties by selling and leasing Class Vehicles with the latent Oil Separator Defect, requiring repair or replacement within the applicable warranty periods, and refusing to honor the warranties with free repairs or replacements of the defective Oil Separator during the applicable warranty periods.

132.    VWGOA further breached these warranties by not correcting the defect. Although VWGOA warranted that it would correct defects in materials and workmanship in the Class Vehicles, Defendants instead replaced failed Oil Separators in Putative Class Vehicles with uniformly defective Oil Separators (which contain the same uniform latent defect) and thus have not corrected the defect as required. Defendants have failed and refuse to conform the Oil Separator Defect

**CLASS ACTION COMPLAINT**

in the Class Vehicles to the express warranty.

133.    VWGOA's conduct described in this Complaint constitutes a breach of express warranties under UCC § 2-313, as adopted in whole or in substance by statutes in all 50 states and the District of Columbia, including:

> Ala. Code § 7-2-313, et seq.; Alaska Stat. § 45.02.313, et seq.; Ariz. Rev. Stat. § 47-2313, et seq.; Ark. Code § 4-2- 313, et seq.; Cal. Com. Code § 2313, et seq.; Colo. Rev. Stat. § 4-2-313, et seq.; Conn. Gen. Stat. § 42a-2-313, et seq.; 6 Del. C. § 2-313, et seq.; D.C. Code § 28:2-313, et seq.; Fla. Code § 672.313, et seq.; Haw. Rev. Stat. § 490:2-313, et seq.; Idaho Code § 28-2- 313, et seq.; Ind. Code § 26-1-2- 313, et seq.; Iowa Code § 554.2313, et seq.; Kan. Stat. § 84- 2-313, et seq.; Ky. Rev. Stat. § 355.2-313, *et seq.*; La. Rev. Stat § 9:2800.53(6) , *et seq.*; 11 M.R.S.A. § 2-313, *et seq.*; Md. Code Ann., Com. Law § 2-313, *et seq.*; Mass. Code 106, § 2-313, *et seq.*; Mich. Comp. Laws 440.2313, *et seq.*; Minn. Stat. § 336.2- 313, *et seq.*; Miss. Code § 75-2-313, *et seq.*; Mo. Rev. Stat. § 400.2-313, *et seq.*; Mont. Code § 30-2- 313, *et seq.*; Neb. U.C.C. § 2-313, *et seq.*; Nev. Rev. Stat. § 104.2313, *et seq.*; N.H. Rev. Stat. § 382-A:2-313,  *et seq.*; N.M. Stat. § 55-2-313, *et seq.*; N.C. Gen. Stat. § 25- 2-313, *et seq.*; N.D. Cent. Code § 41-02-30, *et seq.*; Ohio Rev. Code § 1302.26, *et seq.*; Okla. Stat. Tit. 12A, § 2-313, *et seq.*; Or. Rev. Stat. § 72.3130, *et seq.*; R.I. Gen. Laws § 6A-2-313, *et seq.*; S.C. Code § 36-2-313, *et seq.*; S.D. Codified Laws § 57A-2-313, *et seq.*; Tenn. Code § 47-2- 313, *et seq.*; V.T.C.A., Bus. & C. § 2.313, *et seq.*; Utah Code § 70A-2- 313, *et seq.*; Vt. Stat. Tit. 9A, § 2-313, *et seq.*; Va. Code

§ 8.2-313, *et seq.*; Wash. Rev. Code § 62A.2-313,
*et seq.*; W. Va. Code § 46-2-313, *et seq.*; Wis. Stat.
§ 402.313, *et seq.*; and Wyo. Stat. § 34.1-2-313, *et
seq.*

134.    The Plaintiff and other Putative Class Members, notified Defendants of

the breach within a reasonable time, or, were not required to do so because giving

notice would have been futile, as VWGOA is consistently and systematically

denying all warranty claims for the Oil Separator, regardless of circumstances.

135.    Defendants have knowledge of the Oil Separator Defect and have

chosen to conceal it in order to evade VWGOA's warranty obligations.

136.    VWGOA's attempt to disclaim or limit these express warranties vis-à-

vis consumers is unconscionable and unenforceable under these circumstances.

VWGOA's warranty limitation is unenforceable because it knowingly sold a

defective product without informing consumers about the defect.

137.    VWGOA's attempt to limit its express warranty in a manner that would

result in replacing its latently defective Oil Separator with similarly defective Oil

Separators causes the warranty to fail its essential purpose and renders the warranty

null and void.

138.    The time limits contained in VWGOA's warranty period were and are

also unconscionable and inadequate to protect Plaintiff and Putative Class Members.

Among other things, Plaintiff and Putative Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored VWGOA. A gross disparity in bargaining power exists between VWGOA and the Class Members, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale and that the Oil Separator had a significant risk of failure well before the end of the vehicles' useful lives.

139.    Plaintiff and Putative Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of those obligations as a result of VWGOA's conduct described herein.

140.    As a direct and proximate cause of VWGOA's breach, Plaintiff and other Putative Class Members bought or leased Class Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class Vehicles suffered a diminution in value.  Plaintiff and the Class Members have also incurred and will continue to incur costs for repair and replacement of defective Oil Separators that they would not have had to pay but for VWGOA's breaches of its express warranty obligations to Plaintiff and Class Members.

141.    Accordingly, recovery by Plaintiff and the other similarly situated Class Members is not restricted to the limited warranty promising to repair and/or correct a manufacturing defect, and Plaintiff, individually and on behalf of the other Class

Members, seek all remedies as allowed by law.

142.    Plaintiff and similarly situated Class Members are entitled to legal and equitable relief against Defendants, including damages, consequential damages, specific performance, attorneys' fees, costs of suit, and such further relief as the Court may deem proper. Plaintiff and the other similarly situated Class Members have been damaged in an amount to be determined at trial.

## COUNT TWO
### BREACH OF IMPLIED WARRANTY
### (BY PLAINTIFF ON BEHALF OF ALL PUTATIVE CLASSES)

143.    Plaintiff, individually and for the Putative Class, hereby incorporates each and every allegation set forth above as though fully set forth herein.

144.    Defendants impliedly warranted that the Putative Class Vehicles, which they engineered, manufactured, developed, sold, and/or leased to Plaintiff and Putative Class Members, were merchantable, fit for their ordinary use, not otherwise injurious to consumers, and would come with adequate warnings. However, the Putative Class Vehicles were neither merchantable, fit for their ordinary use, nor non-injurious to Plaintiff and Putative Class Members at the time of sale.

145.    Persons who purchased a Putative Class Vehicle are entitled to the benefit of their bargain: a vehicle without defective Oil Separator. Plaintiff and the Putative Class purchased their Putative Class Vehicles because of, among other

things, their need for a safe, reliable, and efficient vehicle for transportation.  They did not receive that.

146.   Because the Putative Class Vehicles are equipped with the defective Oil Separator, the vehicles purchased or leased and used by Plaintiff and Putative Class Members are unfit for use when sold, and are not merchantable as advertised. Defendants breached the implied warranty of merchantability in the sale or lease of the Putative Class Vehicles to Plaintiff and Members of the Putative Class in that the vehicles were not fit for their ordinary purpose and not merchantable, which affected the usefulness of the Putative Class Vehicles.

147.   Had the fact that the Oil Separator Defect existed been disclosed at the time of sale, the Putative Class Vehicles could not have been sold at the same price.

148.   Defendants knew or should have known that their Putative Class Vehicles would be sold and/or distributed by their authorized dealers, which is the only method by which new or CPO Putative Class Vehicles could be sold or leased, and they knew their Putative Class Vehicles would be re-sold by Defendants' authorized dealers and third-party dealers. All such sales, whether new, CPO, or used, were intended to be distributed by dealers and were intended to be bought by immediate and secondary purchasers in the marketplace, and the claimed violations occurred in direct and immediate connection with the consumer transactions that

give rise to this claim. Additionally, Defendants exercised direct control over the materials, engineering, and manufacturing of the systems of the Putative Class Vehicles.

149.   Plaintiff and Putative Class Members are in privity with Defendants because they are direct beneficiaries and intended third-party beneficiaries of Defendant's warranties. Defendants' breach of their implied warranties proximately caused the Putative Class to suffer damages in excess of $5,000,000.00.

150.   Plaintiff experienced a defect in her Oil Separator on her Putative Class Vehicle. Plaintiff reported this issue to Defendants through written pre-suit notice.

151.   Plaintiff and the Putative Class Members seek full compensatory damages allowable by law, attorneys' fees, costs, punitive damages, and appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Defendants' wrongful acts and practices, restitution, the repair of all Putative Class Vehicles, replacement of all Putative Class Vehicles' Oil Separator with a non-defective one, the refund of money paid to own or lease all Putative Class Vehicles at an amount equaling the difference between the vehicle without the defect versus with the defect, and any other relief to which Plaintiff and the Putative Class may be entitled.

## COUNT THREE
### EQUITABLE AND INJUNCTIVE RELIEF
### (BY PLAINTIFF ON BEHALF OF ALL PUTATIVE CLASSES)

152.   Plaintiff, individually and for the Putative Class, hereby incorporates each and every allegation set forth above as though fully set forth herein but expressly notes that this count is plead in the alternative pursuant to Federal Rule of Civil Procedure 8(a)(3).

153.   Plaintiff and Putative Class Members will suffer irreparable harm if Defendants are not ordered to properly repair all of the Putative Class Vehicles immediately, recall all defective vehicles that are equipped with the defective Oil Separator, and cease and desist from marketing, advertising, selling, and leasing the Putative Class Vehicles with the latent defect.

154.   Plaintiff and the Putative Class do not have an adequate remedy at law and require equitable and injunctive relief either in addition to damages or in the alternative because the Oil Separator Defect is a latent defect which does not always manifest itself at the same time.  Here, some Putative Class Members have yet to experience a manifestation of the Oil Separator Defect – they will experience it at some point in the future and need injunctive relief to ensure Defendants fix the Defect.

155.   Additionally, Plaintiff and the Putative Class do not have an adequate

CLASS ACTION COMPLAINT

remedy at law and require equitable and injunctive relief either in addition to damages or in the alternative because the current replacement Oil Separator is New Old Stock – meaning that it is also defective and any replacement parts currently available from Defendants also contain the latent Defect.  Without equitable and injunctive relief, Plaintiff and the Putative Class would be required to purchase Oil Separator with the same latent defect.

156.    Each Plaintiff would, were the replacement Oil Separator not to contain the latent defect, pay to replace it.

157.    Such irreparable harm includes but is not limited to likely damages, such as the above-described decline in value of the Putative Class Vehicles, as a result of the defects to the Putative Class Vehicles.

158.    Plaintiff and Putative Class Members are likely to be harmed by Defendants' alleged conduct in the future. Plaintiff and, upon information and belief, many Putative Class Members, are repeat customers of Defendants. Thus, it is likely that, if the Defendants repair and correct the Oil Separator Defect, Plaintiff and Putative Class Members are likely to buy another Volkswagen containing an Oil Separator.  Further, Plaintiff and Putative Class Members suffer continuing harm because their assets, the Putative Class Vehicles, will always have lower value than what they paid for them.

159.   Defendants, to the extent they have replaced the Oil Separator for some of their customers, are replacing the Oil Separator with other Oil Separators that have the same Oil Separator Defect, thereby making it inevitable that the Oil Separator will fail yet again even for vehicles where the Oil Separator Defect was allegedly remedied.

160.   This represents an existing and continuing threat of harm to Plaintiff and Putative Class Members. Defendants must be enjoined from attempting to remedy the Oil Separator Defect by replacing it with Oil Separators from Defendants' on-hand inventory, which is alleged by Plaintiff to be equally defective.

161.   Plaintiff and the Putative Class seek full damages allowable by law and appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Defendants' wrongful acts and practices, restitution, the repair of all Putative Class Vehicles, replacement of all Putative Class Vehicles Oil Separators, the refund of money paid to own or lease all Putative Class Vehicles at the difference in value between a non-defective and defective vehicle, and any other relief to which Plaintiff and the Putative Class may be entitled.

## COUNT FOUR
### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. §§ 2301, *ET SEQ.* (BY ALL PLAINTIFF ON BEHALF OF ALL PUTATIVE CLASSES)

162.   Plaintiff, individually and for the Putative Class, hereby incorporates

each and every allegation set forth above as though fully set forth herein.

163.   Plaintiff and Members of the Putative Classes are "consumers" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(3).

164.   Defendants are a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(4) and (5).

165.   The Putative Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(1).

166.   Defendants' implied warranties relate to the future performance of the vehicle because they promised that Putative Class Vehicles would meet certain standards for the reasonable life expectancy of the car.

167.   Defendants have breached and continue to breach the implied warranty of future performance, thereby damaging Plaintiff and Putative Class Members, when the Putative Class Vehicles fail to perform as represented due to the undisclosed and latent Oil Separator Defect. Defendants failed to fully cover or pay for necessary inspections, repairs, part replacements and/or Oil Separator replacements for Plaintiff and the Putative Class.

168.   Plaintiff and Putative Class Members will suffer irreparable harm if Defendants are not ordered to properly repair all of the Putative Class Vehicles immediately, replace the Oil Separator with a non-defective one, refund money paid

to own or lease all Putative Class Vehicles at an amount equaling the difference between the vehicle without the defect versus with the defect, recall all defective vehicles that are equipped with the defective Oil Separator, and cease and desist from marketing, advertising, selling, and leasing the Putative Class Vehicles with the latent defect.

169.    Such irreparable harm includes, but is not limited to, likely damages, including but not limited to decline in value, as a result of the defects to the Putative Class Vehicles.

170.    Plaintiff and the Putative Class seek full compensatory damages allowable by law, attorneys' fees, costs, punitive damages, and appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Defendants' wrongful acts and practices, restitution, the repair of all Putative Class Vehicles, replacement of all Putative Class Vehicles' Oil Separator, the refund of money paid to own or lease all Putative Class Vehicles at an amount equaling the difference between the vehicle without the defect versus with the defect, and any other relief to which Plaintiff and the Class may be entitled. That relief is in excess of $5,000,000.00.

## COUNT FIVE
### UNJUST ENRICHMENT
### (BY PLAINTIFF ON BEHALF OF ALL PUTATIVE CLASSES)

171.    Plaintiff, individually and for the Putative Class, hereby incorporates each and every allegation set forth above as though fully set forth herein.

172.    To the extent necessary, Plaintiff brings this claim in the alternative and any allegation that conflicts with the alternative theory is not plead in this Count.

173.    Defendants knew or should have known that Plaintiff and the Putative Class paid for the Putative Class Vehicles with the expectation that the vehicles would perform as represented.

174.    Plaintiff and the Putative Class conferred substantial benefits on Defendants by purchasing the defective Putative Class Vehicles. Defendants knowingly and willingly accepted and enjoyed those benefits. These benefits include, but are not limited to, an increase in the sale price of Defendants' new cars based on expected premium components, an increase in the sale price resulting from the increased re-sale value established by the thriving re-sale market and anticipated durability, the revenue Defendants generate and receive from the purchase of CPO vehicles by the Putative Class Members (and their concomitant warranty) and an increase in revenue stemming from repairs of the older Putative Class Vehicles at authorized dealerships/centers.

CLASS ACTION COMPLAINT

175.   Plaintiff and the Putative Class did not receive the benefit of the bargain with Defendants because what they paid for was not what they received because their Putative Class Vehicles contained the latent Oil Separator Defect.

176.   Defendants exercised direct control over the materials, engineering, manufacturing, and production of the systems, including the defective Oil Separator, of the Putative Class Vehicles and Plaintiff and Putative Class Members have a direct link with Defendants.

177.   Defendants, currently, gain a benefit when Plaintiff and Putative Class Members pay to repair their Oil Separator Defect.  Defendants are the only Original Equipment Manufacturer of the Oil Separator from whom Plaintiff and the Putative Class Members can buy authorized new parts.  Defendants mark up their cost of replacement Oil Separator and thus receive a benefit from Plaintiff and the Putative Class when they pay for the new replacement Oil Separator.

178.   Defendants' retention of those benefits is inequitable because they obtained those benefits by knowingly selling a product for more than consumers would have purchased it for had they known the truth.

179.   As a direct and proximate cause of Defendants' unjust enrichment, Plaintiff and the Putative Class are entitled to an accounting, restitution, attorneys' fees, costs and interest.  That relief is in excess of $5,000,000.00.

**CLASS ACTION COMPLAINT**

## COUNT SIX
### FRAUD AND SUPPRESSION CLAIM
### (BY PLAINTIFF ON BEHALF OF ALL PUTATIVE CLASS)

180.    Plaintiff, individually and for the Putative Classes, hereby incorporates each and every allegation set forth above as though fully set forth herein.

181.    Plaintiff and the Putative Class Members purchased or leased the Putative Class Vehicles.

182.    By 2010, Defendants knew or should have known the true quality and latent defects of the Oil Separator in the Putative Class Vehicles.

183.    Defendants actively concealed and suppressed material facts concerning the quality of the Oil Separator used on the Putative Class Vehicles from Plaintiff and Putative Class Members.

184.    Defendants concealed and suppressed material facts concerning the Oil Separator Defect causing Putative Class Vehicles' Oil Separator to fail.  Defendants knew that Plaintiff and the Putative Class Members would not be able to inspect or otherwise detect the latent defect prior to purchasing or leasing the Putative Class Vehicles.

185.    At all relevant times, Defendants had the duty and obligation to disclose to the Plaintiff and the Putative Class Members the defects with the Oil Separator in the Putative Class Vehicles. Defendants breached that duty by failing to disclose the

**CLASS ACTION COMPLAINT**

issue with the defective Oil Separator, hiding the Oil Separator Defect, and continuing to sell vehicles with the defective Oil Separator, despite knowledge of the issues.

186.  Defendants committed the foregoing acts and omissions in order to boost confidence in their vehicles and falsely assure purchasers and lessees of Defendant's vehicles that the Putative Class Vehicles were premium, safe, efficient, warranted, and reliable vehicles. Defendants concealed information in order to prevent harm to Defendants and their products' reputations in the marketplace and to prevent Plaintiff and the Putative Class Members from learning of the defective nature of the Putative Class Vehicles prior to their purchase or lease. These false representations and omissions were material to Plaintiff and the Putative Class Members, both because they concerned the quality of the Putative Class Vehicles and because the representations and omissions played a significant role in the decision to purchase or lease the Putative Class Vehicles.

187.  Defendants had a duty to disclose the Oil Separator Defect in the Putative Class Vehicles because it was known and/or accessible only to Defendants; Defendants had superior knowledge and access to the facts; and Defendants knew or should have known the facts were not known to, or reasonably discoverable, by the Plaintiff and the Putative Class Members. Defendants also had a duty to disclose

because they made many general affirmative representations about the quality, warranty, and lack of defects in the Putative Class Vehicles, and specifically, the 2.0 L Petrol Engine (where the Oil Separator is attached), as set forth above, which were misleading, deceptive, and/or incomplete without the disclosure of the additional facts set forth above regarding their actual quality, including, with respect to Putative Class member CPO purchases, Defendants provided inspection reports erroneously indicating that the condition of the vehicle was satisfactory.

188.    Defendants had exclusive control of the information related to the Oil Separator Defect and the fact that Putative Class Vehicles were constructed with defective materials.  Plaintiff and Putative Class Members did not have a way to obtain any information regarding the Oil Separator Defect generally except through Defendants.  Defendants were aware that Plaintiff and Putative Class Members were relying upon Defendants to provide them complete information, as the sole source of actual data/testing information.  Despite Defendants' awareness of consumers' reasonable reliance, Defendants provided only partial, vague information asserting the high quality and durability of the Putative Class Vehicles generally and the Oil Separator specifically.

189.    As a result, the Plaintiff and the Putative Class Members were misled as to the true condition of the Putative Class Vehicles at the time of purchase/lease.

The omitted and concealed facts are material because they directly impact the resale value, appeal, safety, reliability, and usability of the Putative Class Vehicles purchased or leased by the Plaintiff and the Putative Class Members. Whether Defendants' products are as stated or backed by Defendants were material concerns to Plaintiff and the Putative Class Members.

190.    Defendants actively concealed and/or suppressed these material facts, in whole or in part, to protect their reputation, sustain their marketing strategy, avoid recalls that would hurt the brand's image, and save money, and did so at the expense of the Plaintiff and the Putative Class Members.

191.    Had Plaintiff and the Putative Class Members known the truth, specifically that the Oil Separator would fail at approximately 55,000 miles and were defective, they would not have purchased or leased their vehicles, or they would have paid far less to buy or lease them. Had the Oil Separator Defect been disclosed, publicly or otherwise, Plaintiff and the Putative Class Members would have been in a position such that they would have been aware of those disclosures at or before the time of their purchase/lease of the Putative Class Vehicles.

192.    Defendants omitted, suppressed, or concealed material facts of the defective Oil Separator used on the Putative Class Vehicles, leading to the same result: the Plaintiff and the Putative Class Members suffered pecuniary injuries

proximately caused by Defendants' suppression of the material facts of the defect, and those injuries include, but are not limited to, loss of value, inconvenience, and repair costs. Those injuries exceed $5,000,000.00.

## COUNT SEVEN
## VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT ("NEW JERSEY CFA")
## (BY PLAINTIFF ON BEHALF OF THE ALL PUTATIVE CLASSES)

193.    Plaintiff, individually and for the Putative Classes, hereby incorporates each and every allegation set forth above as though fully set forth herein.

194.    Defendants, Plaintiff, and the Putative Class are "persons" within the meaning of N.J. STAT. ANN. §56:8-1(d). Defendants engaged in "sales" of "merchandise" within the meaning of §56:8-1(c) and (e).

195.    As VWGOA, as agent of VAG, is incorporated in New Jersey each Defendant is subject to the New Jersey CFA.

196.    The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real

estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby." N.J. STAT. ANN. §56:8-2.

197.   In the course of its business, Defendants violated the New Jersey CFA by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Class Vehicles and the quality and benefits of the Oil Separator used on the Class Vehicles, as detailed above. Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices related to the Oil Separator Defect, which are proscribed by the New Jersey CFA:

a.  representing that the Class Vehicles have characteristics or benefits that they do not have;

b.  representing that the Class Vehicles are of a particular standard and quality when they are not; and/or

c.  advertising the Class Vehicles with the intent not to sell them as advertised.

198.  Class Vehicles were material to Plaintiff and the Putative Class members, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that Plaintiff and the Putative Class Members would rely on the

**CLASS ACTION COMPLAINT**

misrepresentations, concealments, and omissions. Had they known the truth, Plaintiffs and the Putative Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

199. Plaintiff and the Putative Class Members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

200. Defendants had an ongoing duty to Plaintiff and the Putative Class Members to refrain from unfair and deceptive practices under the New Jersey CFA in the course of its business. Specifically, Defendants owed them a duty to disclose all the material facts concerning the Class Vehicles and the Oil Separator Defect because they possessed exclusive knowledge, they intentionally concealed such material facts from Plaintiff and the Putative Class Members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts related to the Oil Separator.

201. Plaintiff and the Putative Class Members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

202.   Pursuant to N.J. STAT. ANN. §56:8-19, Plaintiff and the Putative Class Members seek an order awarding damages, treble damages, and any other just and proper relief available under the New Jersey CFA.

**COUNT EIGHT**
**VIOLATION OF THE ALABAMA DECEPTIVE**
**TRADE PRACTICES ACT**
**("ADTPA")**
**(BY PLAINTIFF ON BEHALF OF THE ALABAMA SUBCLASS)**

203.   Plaintiff, individually and for the Alabama Subclass, hereby incorporates each and every allegation set forth above as though fully set forth herein.

204.   Defendants' marketing, sale and/or distribution of the Class Vehicles and the Plaintiff and the Alabama Subclass's purchase of the Class Vehicles was a sale or distribution of goods to a consumer within the meaning of the ALABAMA DECEPTIVE TRADE PRACTICES ACT (CODE OF ALABAMA §§ 8-19-1, et seq.).

205.   The Plaintiff and Alabama Subclass purchased the Class Vehicles for personal, family, or household use.

206.   Defendants' acts and practices as described herein have misled and deceived and/or likely to mislead and deceived the Alabama Subclass and the

general public of the State of Alabama. Defendants have advertised, marketed, and sold the Class Vehicles as set forth herein. Thus, Defendants have wrongfully:

a.      represented that the Class Vehicles have sponsorship, approval, characteristics, ingredients, uses benefits or qualities that they do not have;

b.      represented that the Class Vehicles are of a particular standard, quality, or grade, or that they are of a particular style or model, when they are of another;

c.      knowingly, intentionally, and/or recklessly omitted, suppressed, and/ or concealed the true nature of the Class Vehicles;

d.      engaged in unconscionable, false, misleading, and/or deceptive acts and/or practices in the conduct of trade or commerce – marketing, advertising, and selling the Class Vehicles; and

e.      advertised the Class Vehicles with intent not to sell them as advertised.

207. By their actions, Defendants are disseminating uniform false advertising which by its nature is unfair, deceptive, untrue, and/or misleading within the meaning of the ALABAMA DECEPTIVE TRADE PRACTICES ACT. Such actions are likely to deceive, do deceive, and continue to deceive the Alabama general public for all the reasons detailed herein above.

208.   Defendants intended for the Plaintiffs and Alabama Subclass to rely on their representations and omissions and the Plaintiffs and Alabama Subclass did rely on Defendants' misrepresentations and omissions of fact.

209.   The misrepresentations and omissions of fact constitute deceptive, false and misleading advertising in violation of the ALABAMA DECEPTIVE TRADE PRACTICES ACT.

210.   By performing the acts described herein Defendants caused monetary damage to the Plaintiff and Alabama Subclass of similarly situated individuals.

211.   Accordingly, Plaintiff requests the following relief both individually and on behalf of the Alabama Subclass:

a.   actual damages sustained by the Plaintiff and Alabama Subclass or the sum of $100.00, whichever is greater;

b.   three times actual damages;

c.   appropriate injunctive relief in the form of enjoining Defendants from continuing to violate Alabama statutory law;

d.   attorneys' fees and costs; and

e.   such other and further relief as the Court deems proper.

## COUNT NINE
## VIOLATION OF THE VIRGINIA CONSUMER PROTECTION ACT
## ("VCPA")

CLASS ACTION COMPLAINT

**(BY PLAINTIFF ON BEHALF OF ALL PUTATIVE CLASSES)**

212.    Plaintiff, individually and for the Classes, hereby incorporates each and every allegation set forth above as though fully set forth herein.

213.    Defendants, Plaintiff, and members of the Class are "persons" within the meaning of Va. Code § 59.1-198.

214.    Defendants are a "supplier" within the meaning of Va. Code § 59.1-198.

215.    The VCPA makes unlawful "fraudulent acts or practices." Va. Code § 59.1-200(A).

216.    In the course of Defendants' business, they intentionally or negligently concealed and suppressed material facts concerning the Oil Separator Defect.

217.    Plaintiff and the Class Members had no way of discerning that Defendants' representations noted above were false and misleading, or otherwise learning of facts which Defendants failed to disclose. It is not reasonable to expect the average consumer to be able to detect, identify, or diagnose defects in complex automotive parts, such as the Oil Separator Defect.

218.    Defendants thus violated the Act, at a minimum by: (1) misrepresenting the source, sponsorship, approval, or certification of goods or services; (2) misrepresenting that goods or services have certain quantities, characteristics,

ingredients, uses, or benefits; (3) misrepresenting that goods or services are of a particular standard, quality, grade, style or model; (4) advertising goods or services with intent not to sell them as advertised; and (5) using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction. Va. Code § 59.1-200(A).

219.    Defendants engaged in misleading, false, unfair or deceptive acts or practices that violated the VCPA by installing, failing to disclose, and/or actively concealing the Oil Separator Defect.

220.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff and the Classes.

221.    Defendants knew or should have known that their conduct violated the VCPA.

222.    Defendants owed Plaintiffs and Class Members a duty to disclose, truthfully, all the facts concerning the Oil Separator Defect installed in the Class Vehicles because they:

a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States which contained said defect; and

**CLASS ACTION COMPLAINT**

b.  intentionally concealed the foregoing from Plaintiff and Class Members.

223.  Defendants' installation of the defective Oil Separator into the Class Vehicles was material to Plaintiff and the Classes because vehicles with such a defect are inherently less valuable than vehicles without such a defect.

224.  Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and Class Members, about the true quality and the true value of the Class Vehicles.

225.  Plaintiff and Class Members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and their concealment of and failure to disclose material information. Plaintiff and the Class Members who purchased or leased the Class Vehicles would not have purchased or leased them at all and/or—if the Class Vehicles' true nature had been disclosed and mitigated, and would have paid significantly less for them. Plaintiff and Class Members also suffered diminished value of their vehicles, as well as lost or diminished use.

226.  Defendants had an ongoing duty to all Class Members to refrain from unfair and deceptive practices under the VCPA in the course of its business.

227.  Defendants' violations present a continuing risk to Plaintiff and Class Members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

228.  Pursuant to Va. Code § 59.1-204(A)–(B), Plaintiff and the Class Members are entitled to the greater of actual damages or $500 for each Class Member, attorneys' fees, and costs.

229.  Because Defendants' actions were willful, Plaintiff and the Class should each receive the greater of treble damages or $1,000. *Id.*

## DEMAND FOR JURY TRIAL

Plaintiff and the Putative Class hereby demand a trial by jury on all issues.

Dated: <u>December 8, 2024</u>          Respectfully submitted,

<u>*/s Taylor C. Bartlett*</u>
Taylor C. Bartlett (asb-2365-a51b)
W. Lewis Garrison, Jr.
Mark Ekonen
Email: taylor@hgdlawfirm.com
Email: mark@hgdlawfirm.com
Email: lewis@hgdlawfirm.com
**HENINGER GARRISON DAVIS, LLC**
2224 1st Avenue North
Birmingham, Alabama 35203
Telephone: (205) 326-3336
Facsimile: (205) 326-3332

*Attorneys for Plaintiff and Putative Classes*

**CLASS ACTION COMPLAINT**