## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **DAGNEY JOHNSON BURT,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| **v.** } | **Case No.: 2:24-cv-01693-RDP** |
| } | |
| **VOLKSWAGEN GROUP OF AMERICA,** } | |
| **INC. et al.,** } | |
| } | |
| **Defendants.** } | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on Volkswagen Group of America, Inc.'s Motion to Dismiss the First Amended Class Action Complaint. (Doc. # 26). The Motion has been full briefed (Docs. # 29, 31), and is ripe for decision. After careful review and for the following reasons, the Motion is due to be granted.

## I.    Background

Plaintiff Dagney Johnson Burt is an Alabama resident who, in November 2022, purchased new a Volkswagen Atlas (2.0L), Vehicle Identification No. 1V2DP2CAXPC518766 ("Vehicle" or "Putative Class Vehicle") from an authorized Volkswagen dealership in Birmingham, Alabama. (Doc. # 16 at ¶¶ 1, 16, 40).

Plaintiff alleges that Defendant Volkswagen Group of America, Inc. provided an express warranty on Plaintiff's vehicle for a period of 4 years or 50,000 miles, whichever occurs first. (*Id.* at ¶ 111). Plaintiff claims that in the Warranty booklet, Defendant represented that her Putative Class Vehicle was free of defects. (*Id.* at ¶ 49).

One of the main and important reasons for Plaintiff selecting her Vehicle was its 2.0L Petrol Engine which was advertised by Defendant as efficient, safe, and reliable. (*Id*. at ¶ 42). Before her purchase, Plaintiff saw Volkswagen's newspaper, magazine, social media, in store, and television ads touting that the new, certified pre-owned, and used Putative Class Vehicles were reliable, durable, safe, efficient, fit, and exceptional in quality, and that they were premium products. (*Id*. at ¶ 44). Plaintiff relied on Defendant's representations in making her purchase. (*Id*.).

Plaintiff alleges that the vehicle she purchased in Alabama in November 2022 contained a latently defective Oil Separator. (*Id*. at ¶¶ 40, 43). Plaintiff filed this case asserting individual and class claims related to the allegedly defective Oil Separator (sometimes referred to as the PCV Valve) in certain cars manufactured by Defendant Volkswagen Group of America, Inc. (*Id*. at ¶¶ 2-3). For ease of reference, the court refers to this mechanical issue as the "Oil Separator Defect."

Plaintiff asserts that she first became aware of the Oil Separator Defect on or about November 6, 2024 when she was quoted a cost of more than $2,100 to repair and replace it. (*Id*. at ¶ 50). In making this allegation, Plaintiff referred to an "Exh. A." (Docs. # 1, 16). However, no "Exh. A" was attached to either the Complaint or the FAC. (Docs. # 1, 16).

Defendant denied Plaintiff's request to repair and replace the defective Oil Separator at their expense or at no cost to Plaintiff (*i.e.*, a Warranty repair). (*Id*. at ¶ 51).

Two documents central to Plaintiff's Complaint and later-filed First Amended Complaint ("FAC") that were not attached to those pleadings are (1) the Warranty on which she bases her breach of warranty claim (*Id*. at ¶ 31 ("For each Putative Class Vehicle, Defendant issued an express warranty which covered the vehicle"), and (2) the document evincing her notice about the allegedly defective Oil Separator (*Id*. at ¶ 50 ("Ms. Burt first became aware of the Oil Separator Defect on or about November 6, 2024 when she was quoted more than $2,100 to repair and replace

the defective Oil Separator. *See* Exh. A."). Nevertheless, Defendant filed those documents as exhibits to its Motion to Dismiss. (Docs. # 26-2, 26-3, 26-4).

"When a court deciding a motion to dismiss considers documents beyond the complaint, the motion is typically converted to one for summary judgment." *Thornton v. Ocwen Loan Servicing LLC*, 2023 WL 4612697, at *3 (M.D. Ala. June 15, 2023), *report and recommendation adopted*, 2023 WL 4611807 (M.D. Ala. July 18, 2023) (citing *Finn v. Gunter*, 722 F.2d 711, 713 (11th Cir. 1984)). "However, under the incorporation-by-reference doctrine, a court may consider evidence attached to a motion to dismiss without converting the motion into one for summary judgment if (1) the plaintiff refers to the document in the complaint, (2) the document is "central to the plaintiff's claim," and (3) the document's contents are undisputed." *Thornton*, 2023 WL 4612697, at *3 (citing *Baker v. City of Madison, Alabama*, 67 F.4th 1268, 1276 (11th Cir. 2023) (in turn citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) and *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997))). "Evidence is 'undisputed' in this context if its authenticity is unchallenged." *Id.* (citing *Horsley*, 304 F.3d at 1134). Plaintiff has not challenged the authenticity of these documents, nor has she objected to those documents, and she has conceded that she sought repair for the alleged defect at issue after the term of the warranty expired. (Docs. # 26-4, # 29 at 8).

The dealer record dated November 6, 2024, which is the date when Plaintiff alleges she was put on notice of the allegedly defective Oil Separator, shows that the mileage on her car at that time was 57,243 miles, well over the 50,000 mile mark when the express warranty expired. (Doc. # 16 at ¶ 111).

As a result of the Oil Separator Defect, Plaintiff's vehicle began to leak oil, which has resulted in Plaintiff having to purchase oil in between service trips, and oil leaking from the vehicle

has stained her driveway. (*Id*. at ¶ 52). The leaking oil has also damaged the streets and other parking areas within the community where Plaintiff resides, and Plaintiff has been made aware by her homeowners association that she is responsible for remediating the oil stains caused by the oil leaking from her vehicle. (*Id*. at ¶ 53).

Plaintiff alleges that each Putative Class Vehicle is a premium vehicle that comes with a relatively high price tag, purportedly in exchange for a vehicle that is superior to others in quality, safety, looks, drivability, efficiency, fit, and finish. (*Id*. at ¶ 23). Plaintiff alleges she sought out and purchased her vehicle intentionally after seeing and relying on Defendant's ads. (*Id*.).

Plaintiff also contends Defendant manufactured and sold the Putative Class Vehicles with the Oil Separator Defect while concealing that defect. (*Id*. at ¶ 55). Defendant directly markets the Putative Class Vehicles to consumers via extensive nationwide, multimedia advertising campaigns on television, the Internet, billboards, print publications, mailings, and through other mass media that advertised the Class Vehicle's 2.0L engine as one that "balances efficiency and power." (*Id*. at ¶¶ 55-57). In its advertising, Defendant also touted its engine as "lightweight" and containing "modern technology." (*Id*. at ¶ 57).

Due to the Oil Separator Defect, Plaintiff alleges that the Putative Class Vehicles fail to adhere to Defendant's own standards and are neither efficient, safe, nor reliable. (*Id*. at ¶ 24). The Oil Separator Defect has affected the resale and buyback value of the Putative Class Vehicles. (*Id*. at ¶ 25).

Plaintiff also asserts that Defendant knew or should have known, before marketing and selling the Putative Class Vehicles to Plaintiff and the Putative Class Members, about the Oil Separator Defect. Yet, Defendant continued to sell the Putative Class Vehicles with the hope that

Putative Class Members would not experience the Oil Separator Defect within the applicable warranty period. (*Id*. at ¶ 27).

Plaintiff alleges that Defendant violated its duty to engineer, manufacture, develop, construct, inspect, and test the Putative Class Vehicles to make them suitable for the ordinary purposes of their use. (*Id*. at ¶ 32). She further alleges that Defendant breached its warranties for the Putative Class Vehicles because of the latent defect with the Oil Separator and by failing to repair the Oil Separator, and otherwise continuing to use a defective Oil Separator on their vehicles. (*Id*. at ¶ 33).

Plaintiff has also alleged the following. As a result of Defendant's affirmative marketing and failure to disclose the known defect, Plaintiff and Putative Class Members formed a reasonable belief and expectation that the 2.0L Petrol Engine in the Putative Class Vehicles was of high quality, would endure, was safe, was reliable, and would positively impact resale value of the vehicles and would not fail under normal circumstances. (*Id*. at ¶ 62). Plaintiff and Putative Class Members justifiably and reasonably relied on this reasonable belief and Defendant's misleading marking that concealed the Oil Separator Defect when they purchased or leased their Putative Class Vehicles. (*Id*. at ¶¶ 62, 63). Defendant's failure to inform Plaintiff and Putative Class Members of the defect caused Plaintiff and Putative Class Members harm. (*Id*. at ¶ 65). Because of the disparity between the quality of the Putative Class Vehicles negotiated for and the Putative Class Vehicles actually received, Plaintiff and the Putative Class Members suffered economic harm. (*Id*. at ¶ 86).

Plaintiff alleges that Defendant concealed material information regarding the true nature of the Oil Separator Defect in every communication they had with Plaintiff and the Putative Class

Members and made contrary representations about the quality and durability of the Putative Class Vehicles. (*Id*. at ¶ 104).

## II.    Legal Standard

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id*. at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ*., 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Id. A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an

entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

## III.    Analysis

Plaintiff asserts claims on behalf of herself, a "Putative National Class," and a "Putative Alabama Subclass." (*Id.* at ¶ 106). Her FAC, which is the operative pleading, asserts the following claims against Defendant Volkswagen Group of America, Inc.: (1) breach of express warranty (Count One), (2) breach of implied warranty (Count Two), (3) a standalone claim for "equitable and injunctive relief" (Count Three), (4) common law negligence (Count Four), (5) unjust enrichment (Count Five), (6) "fraud and suppression" (Count Six), and (7) violation of the New Jersey Consumer Fraud Act (Count Seven), (8) the Alabama Deceptive Trade Practices Act ("ADTPA") (Count Eight), and (9) the Virginia Consumer Protection Act (Count Nine). (*Id.* at pp. 45-74).

### A.    Breach of Express Warranty (Count One)

Defendant argues that Plaintiff's breach of express warranty claim "fails because she has not alleged facts establishing that she experienced an oil separator problem and presented it to a Volkswagen dealer for repair *within the express warranty period*." (Doc. # 26-1 at 16) (emphasis added). Plaintiff responds that enforcing the Warranty's durational limit is unconscionable. (Doc. # 29 at 8).

Plaintiff's Warranty was in effect only for a period of 4 years or 50,000 miles, whichever occurs first. (Doc. # 16 at ¶ 111; Doc. # 26-3 at 11). Plaintiff "was refused a warranty repair because the mileage of her vehicle [was] 7,000 miles over the durational limit" of the Warranty when she presented it for repair. (Doc. # 29 at 8; Doc. # 26-3 at 11; Doc. # 26-4).

### 1.    The Terms of the Warranty

In *Hurry v. Gen. Motors LLC*, the Honorable Emily C. Marks, Chief Judge of the Middle District of Alabama, addressed a similar factual situation. She explained,

> "An express warranty to repair anticipates that defects may occur and that, if detected during the term of the warranty, they will be remedied under the terms of the warranty." *Fowler v. Goodman Mfg. Co*., 2014 WL 7048581, at *6 (N.D. Ala. Dec. 12, 2014). "A manufacturer does not necessarily breach an express warranty to repair by selling defective goods; rather, breach occurs if the manufacturer fails its promise to *remedy* defects *under the terms of the warranty*." *Freeman v. NIBCO, Inc*., 526 F. Supp. 3d 1112, 1130 (N.D. Ala. 2020) (emphases in original) (citing *Fowler*, 2014 WL 7048581, at *6).

622 F. Supp. 3d 1132, 1143-44 (M.D. Ala. 2022).

"Alabama law allows warrantors to limit express warranty coverage in duration and 'method by which the warranty holder notifies the [warrantor] of a defect covered by the warranty.'" *Wyatt v. CMH Mfg., Inc*., 2025 WL 775342, at *3 (N.D. Ala. Mar. 11, 2025) (quoting *Turner v. Westhampton Ct., L.L.C*., 903 So. 2d 82, 91 (Ala. 2004)).

The terms of Plaintiff's Warranty only promised to make repairs if the vehicle was presented for repair while the warranty was in effect. The Warranty was not in effect when Plaintiff sought repair of the Oil Separator because the car had already driven 57,000 miles. Therefore, it follows that Defendant did not breach the warranty by refusing to cover the repair. *Hurry*, 622 F. Supp. 3d at 1143.; *see also Riley v. Gen. Motors, LLC*, 664 F. Supp. 3d 1336, 1345 (M.D. Fla. 2023) (plaintiffs' breach of warranty claims dismissed because they failed to allege they sought repairs within the warranty period).

### 2.     Unconscionability

Plaintiff's counsel here also represented the plaintiffs in *Riley*. And, as they did in *Riley*, in an effort to circumvent the issue of the duration of the warranty, they argue that "[t]he duration of the warranty is unconscionable." (*Compare* Doc. # 29 at 8 *with Riley*, 664 F. Supp. 3d at 1345). However, there is nothing inherently unconscionable about a warranty with a durational limit. And, this straight forward legal point is no less true simply because of the Oil Separator Defect. Even "[a] defendant's knowledge of a latent defect at the time of sale [] does not salvage a claim for breach of express warranty where the warranty has expired before the defect manifests." *Licul v. Volkswagen Grp. of Am., Inc*., 2013 WL 6328734, at *2 (S.D. Fla. Dec. 5, 2013) (citing *Aprigliano v. Am. Honda Motor Co*., 2013 WL 5788771 (S.D. Fla. Oct. 28, 2013)). "To hold that a manufacturer's knowledge of potential failures renders such limitations unenforceable would thus 'render meaningless time/mileage limitations in warranty coverage,'[] and would be contrary to the overwhelming weight of precedent enforcing such limitations." *Licul*, 2013 WL 6328734, at *2 (quoting *Abraham v. Volkswagen of Am., Inc*., 795 F.2d 238, 250 (2d Cir.1986)) (internal citation omitted). "[U]nconscionability of an express warranty requires more than a defendant's mere knowledge of a defect at the time of sale." *Id*. at *3.

More importantly, however, as the Honorable L. Scott Coogler (Ret.), formerly of this court, has explained, unconscionability is an affirmative defense:

> Under Alabama law, unconscionability is an affirmative defense and not available for use in obtaining affirmative relief. *Sanders v. Colonial Bank of Alabama*, 551 So.2d 1045, 1045 (Ala. 1989); *Cowin Equipment Co., Inc. v. General Motors Corp*., 734 F.2d 1581, 1582–83 (11th Cir.1984); *Winecoff v. Compass Bank*, 876 So.2d 1145, 1148 (Ala.Civ.App. 2003). *See also Blue Cross Blue Shield of Alabama v. Rigas*, 923 So.2d 1077, 1086 (Ala. 2005).

*Camp v. Alabama Telco Credit Union*, 2013 WL 2106727, at *5 (N.D. Ala. May 13, 2013). "[N]o [] affirmative claim [of unconscionability] exists under Alabama law. *Id*.

Plaintiff did not allege that she sought repairs during the warranty period, and her argument that she is entitled to relief in any event because the warranty period is unconscionable is without merit. Plaintiff has failed to state a plausible breach of express warranty claim. Accordingly, Plaintiff's breach of express warranty claim in Count One of the FAC is due to be dismissed.

### B.    Breach of Implied Warranty (Count Two)

Defendant argues that Plaintiff's breach of implied warranty claim is due to be dismissed because (1) there is no privity of contract between Plaintiff and Defendant, (2) she did not plead she had problems with the Oil Separator during the implied warranty period, and (3) she did not plead facts showing that the vehicle was "unmerchantable." (Doc. # 26-1 at 17-19). In response, Plaintiff argues that "a third-party beneficiary of a contract between a manufacturer and seller can bring an implied warranty claim." (Doc. # 29 at 11 (quoting *Harman v. Taurus Int'l Mfg*., 586 F. Supp. 3d 1155, 1169 (M.D. Ala. Feb. 16, 2022)).

### 1.    Can Plaintiff Assert An Implied Warranty Claim?

"Under Alabama law, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.'" *Hurry*, 622 F. Supp. 3d at 1145 (citing Ala. Code § 7-2-314(1)). "To be merchantable, the goods must be 'fit for the ordinary purposes for which such goods are used.'" *Id*. (citing Ala. Code § 7-2-314(2)(c)). "The implied warranty of merchantability extends from the seller to the buyer." *Id*. (citing *Rhodes v. Gen. Motors Corp*., 621 So. 2d 945, 947 (Ala. 1993)).

Although the Alabama Supreme Court had held otherwise in a case over thirty years ago – *McGowan v. Chrysler Corp*., 631 So.2d 842 (Ala. 1993)[1] – addressing a claim and arguments

---

[1] In *McGowan*, the Alabama Supreme Court held that the purchaser of vehicle was not a third-party beneficiary of the contract between the vehicle manufacture and dealer and "had no valid third-party contract claim." *McGowan v. Chrysler Corp*., 631 So. 2d 842, 848 (Ala. 1993)

similar to those before the court here, Judge Marks reviewed Alabama law and noted that "[t]he Alabama Court of Civil Appeals has held that a third-party beneficiary *can* maintain a breach of implied warranty claim against the manufacturer or upstream seller." *Id.* at 1146-47 (citing *Chandler v. Hunter*, 340 So. 2d 818, 822 (Ala. Civ. App. 1976); *Morris Concrete, Inc. v. Warrick*, 868 So. 2d 429, 435 (Ala. Civ. App. 2003)) (emphasis added). As Judge Marks further explained:

> Citing one or both of these cases, Alabama federal district courts have echoed this principle. *See Harman v. Taurus Int'l Mfg*., 586 F.Supp.3d 1155, 1169 (M.D. Ala. Feb. 16, 2022) ("[A] third-party beneficiary to a contract between a manufacturer and seller can bring an implied warranty claim." (citing *Morris Concrete*, 868 So. 2d at 435)); [*Freeman v. NIBCO, Inc*., 526 F. Supp. 3d 1112, 1132 (N.D. Ala. 2020)] ("Under Alabama law, third-party beneficiaries of a contract can stand in privity of contract with a seller and maintain a breach of implied warranty claim against the seller." (first citing *Morris Concrete*, 868 So. 2d at 435; then citing *Chandler*, 340 So. 2d at 822)); [*Naef v. Masonite Corp*., 923 F. Supp. 1504, 1508 (S.D. Ala. 1996)] ("[T]he Court finds that a reasonable Alabama jurist could find that Plaintiffs were third party beneficiaries to the contract between the Alabama dealers and the builders/contractors, and, under *Chandler*, Plaintiffs have a cause of action [for breach of implied warranty] against the Alabama dealers.").

*Id*.

Plaintiff has alleged that "Plaintiff and Putative Class Members are in privity with Defendant because they are direct beneficiaries and intended third-party beneficiaries of Defendant's warranties. Defendant's breach of these implied warranties proximately caused the Putative Class to suffer damages in excess of $5,000,000.00." (Doc. # 16 at ¶ 139). The court assumes without deciding that Plaintiff's FAC supports a reasonable inference that the parties to the contract for the vehicles – that is, Volkswagen and the dealership where Plaintiff purchased her vehicle – intended to bestow the benefit of the implied warranty of merchantability on Plaintiff.

## 2. The Same Durational Limit in the Express Warranty Applies to Plaintiff's Implied Warranty Claim

Plaintiff's Warranty specifies that "Any implied warranty, including any implied warranty of merchantability or warranty of fitness for a particular purpose, is limited in duration to the period

of this written warranty." (Doc. # 26-3 at 11). Similar to her arguments about Defendant's express warranty, Plaintiff again argues that the durational limit on the implied warranty is unconscionable. She bases this argument on the same reasons she contends the durational limit on the express warranty is unconscionable. (Doc. # 29 at 13). But, as noted above, unconscionability is an affirmative defense unavailable to a plaintiff in seeking affirmative relief. *Camp*, 2013 WL 2106727, at *5; *see also Century 21-Reeves Realty, Inc. v. McConnell Cadillac, Inc*., 626 So. 2d 1273, 1275 (Ala. 1993), *overruled on other grounds by Hines v. Riverside Chevrolet-Olds, Inc*., 655 So. 2d 909 (Ala. 1994) (affirming summary judgment for Defendant where, "pursuant to Ala.Code 1975, § 7–2–316 ("Exclusion or modification of warranties"), GM had expressly limited the duration of any implied warranties of merchantability (§ 7–2–314) and fitness for a particular purpose (§ 7–2–315) to the duration of the extended limited warranty on the engine.").

### 3.    Plaintiff Has Not Adequately Alleged Unmerchantability

Plaintiff's implied warranty of merchantability claim requires that she "show that the goods were unmerchantable or unfit for the ordinary purposes for which they are used." *Spain v. Brown & Williamson Tobacco Corp*., 872 So. 2d 101, 109 (Ala. 2003) (quoting *Allen v. Delchamps, Inc*., 624 So.2d 1068 (Ala. 1993) (in turn citing Ala.Code 1975, § 7–2–314).

Plaintiff argues that the Warranty's durational limit should not be applied to the implied warranty claim because the car was "unmerchantable." (Doc. # 29 at 14). However, Plaintiff's FAC contains nothing but conclusory allegations in support of this theory. (Doc. # 16 at ¶¶ 32, 34, 47, 133, 135, 136, 141). She has not alleged that the car was undriveable or unfit for the purpose for which it was intended, *i.e*., reliable transportation. Plaintiff had driven her vehicle more than 57,000 miles before discovering the Oil Separator Defect. She does not claim that her vehicle was

inoperable or that she had it repaired, and she does not claim to have ever stopped driving it. Thus, she has failed to plausibly plead facts supporting her unmerchantability theory.

Because Plaintiff did not seek to repair the Oil Separator Defect within the duration of the Warranty, and because she had not plausibly pled that her vehicle was unmerchantable, Plaintiff's breach of implied warranty claim is due to be dismissed.

### C.    Standalone Claim For "Equitable and Injunctive Relief" (Count Three)

Defendant argues that Plaintiff's claim for equitable and injunctive relief should be dismissed because Plaintiff has an adequate remedy at law. This is likely true, but this claim fails for a more fundamental reason: injunctions and assertions of entitlement to equitable relief are not affirmative causes of action, but rather are merely remedies. "[A]n independent claim for injunctive relief fails as a matter of law because injunctions are not causes of action but, rather, are remedies tied to some other cause of action.'" *Liberty Nat'l Life Ins. Co. v. Gann*, 2025 WL 912447, at \*7 (S.D. Ala. Feb. 14, 2025), *report and recommendation adopted*, 2025 WL 913457 (S.D. Ala. Mar. 25, 2025) (citing *Kornegay v. Beretta USA Corp*., 614 F. Supp. 3d 1029, 1037 (N.D. Ala. 2022); *Sirmon v. Wyndham Vacation Resorts, Inc*., 2012 WL 13020303, at \*5 (N.D. Ala. Apr. 17, 2012) ("Injunctive relief is just that...a form of relief, not a basis on which to grant it."). "So, any claim for injunctive relief here is merely a remedy dependent upon [proof of another substantive claim]." *Gann*, 2025 WL 912447, at \*7 (citing *Klay v. United Healthgroup, Inc*., 376 F.3d 1092, 1097 (11th Cir. 2004) ("[A]ny motion or suit for a traditional injunction must be predicated upon a cause of action [] regarding which a plaintiff must show a likelihood or actuality of success on the merits. There is no such thing as a suit for a traditional injunction in the abstract.")).

Because Plaintiff's request for equitable or injunctive relief is not an independent claim, *Garmon v. Am. Bar Ass'n J.*, 2025 WL 467460, at *3 (N.D. Ala. Feb. 11, 2025), the claims in Count Three of the FAC are due to be dismissed.

### D.    Common Law Negligence (Count Four)

Defendant argues that Plaintiff's negligence claim should be dismissed because Defendant owed no duty to Plaintiff and because Alabama's economic loss rule bars the claim in any event. (Doc. # 26-1 at 20-21). Plaintiff argues that her negligence claim may proceed even in the absence of privity and the economic loss rule does not bar her claim. (Doc. # 29 at 14-18).

### 1.    Economic Loss Rule Bars Recovery of Damages to Plaintiff's Vehicle

The vast majority of Plaintiff's alleged damages are barred by Alabama's economic loss rule. "What the economic loss rule means is that 'Alabama does not recognize a tort-like cause of action for the breach of a duty created by contract.'" *Harbin v. RoundPoint Mortg. Co*., 2019 WL 7167588, at *5 (N.D. Ala. Nov. 6, 2019) (quoting *Blake v. Bank of Am., N.A*., 845 F.Supp.2d 1206, 1210 (M.D. Ala. 2012)). Under the "economic loss rule," "a cause of action does not arise under tort theories of negligence, wantonness, strict liability, or the AEMLD where a product malfunctions or is defective and thereby causes damage only to the product itself." *Parker v. Exterior Restorations, Inc*., 653 F. Supp. 3d 1105, 1112–13 (S.D. Ala. 2023) (citing *Ford Motor Co. v. Rice*, 726 So. 2d 626, 631 (Ala. 1998)). However, "[t]he rule does not bar recovery when there has been damage to "other property." *Parker*, 653 F. Supp. 3d at 1113 (citing *Vesta Fire Insurance Corp. v. Milam & Co. Construction, Inc*., 901 So. 2d 84, 107 (Ala. 2004)).

Plaintiff's FAC alleges that not only did the Oil Separator Defect cause damage to her vehicle, but also that it required her to purchase oil between services, and stained her driveway, as well as the streets and parking areas in her community. (Doc. # 16 at ¶¶ 52-53). She further

alleges that her homeowner's association has notified her that she is responsible remedying these other damages. (*Id.*).

Alabama's economic loss rule bars any claim for damages to Plaintiff's vehicle. *Kornegay v. Beretta USA Corp.*, 614 F. Supp. 3d 1029, 1034 (N.D. Ala. 2022). Therefore, if Plaintiff had properly pled a negligence claim against Defendant, she could not recover for damages to her vehicle. She might have been able to recover these other limited damages to her driveway, the street, and parking places in her community. But, as discussed below, she has not properly pled a negligence claim against Defendant.

### 2.    Plaintiff Has Not Plausibly Alleged Defendant Violated Any Duty Owed to Plaintiff

"To prevail on a negligence theory against a manufacturer requires proof of the traditional elements of '(1) duty, (2) breach of duty, (3) proximate cause, and (4) injury.'" *Garrison v. Sturm, Ruger & Co., Inc.*, 322 F. Supp. 3d 1217, 1224 (N.D. Ala. 2018) (quoting *Yamaha Motor Co. v. Thornton*, 579 So.2d 619, 623 (Ala. 1991)). "[I]t is well established under more recent precedent that an ultimate consumer can recover in negligence against a manufacturer even in the absence of privity of contract." *Ex parte Grand Manor, Inc.*, 778 So. 2d 173, 178 (Ala. 2000); *but see Keck v. Dryvit Sys., Inc.*, 830 So. 2d 1, 10 (Ala. 2002) (holding otherwise for subsequent purchasers of a house).

However, "'a plaintiff pursuing a products-liability claim against a manufacturer under either [a negligence or AEMLD] theory can succeed *only* if the plaintiff establishes that the product at issue is *sufficiently unsafe so as to render it defective*.'" *Garrison*, 322 F. Supp. 3d at 1224 (quoting *McMahon v. Yamaha Motor Corp., U.S.A.*, 95 So.3d 769, 772 (Ala. 2012)) (emphasis added). Under Alabama law, "[t]he term 'defective' means that the product fails to meet the reasonable safety expectations of an 'ordinary consumer,' that is, an objective 'ordinary

consumer,' possessed of the ordinary knowledge common to the community." *Id.* at 1224–25 (quoting *Deere & Co. v. Grose*, 586 So.2d 196, 198 (Ala. 1991)).

Here, Plaintiff has not plausibly alleged that her vehicle was so unsafe so as to render it defective. Plaintiff drove her car for 57,000 miles before experiencing any problem with the Oil Separator. And, although she has alleged that it caused damage to her driveway and certain roadways, she has not made any plausible allegation that this defect rendered the car unsafe. She has only made general allegations that her case was unsafe, but these assertions are conclusory, not plausible. Therefore, she has failed to state a negligence claim against Defendant. For these reasons, Plaintiff's claims in Count Four of the FAC are due to be dismissed

### E.    Fraud and Suppression (Count Six)

#### 1.    Shotgun Pleading

Count Six of the FAC purports to contain two separate types of fraud claim. As drafted, Count Six is an example of a shotgun pleading. The Eleventh Circuit has repeatedly and vehemently condemned shotgun pleadings. *See Est. of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1356 n.3 (11th Cir. 2020). There are four basic categories of shotgun pleadings: 1) those in which "each count adopts the allegations of all preceding counts;" 2) those that do not re-allege all preceding counts but are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; 3) those that do not separate each cause of action or claim for relief into a different count; and 4) those that assert multiple claims against multiple defendants without specifying which applies to which. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015). "The unifying characteristic of all types of shotgun pleadings is that they fail to ... give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323; *see also Arrington v. Green*, 757

F. App'x 796, 797 (11th Cir. 2018) ("[W]e 'have little tolerance for shotgun pleadings.'").

Plaintiff's Complaint falls into the third category and is due to be dismissed for this reason alone.

*Weiland*, 792 F.3d at 1321-23.

### 2.    Plaintiff's Misrepresentation Claim

Plaintiff's particular allegations of fraud in the FAC consist of the following:

42.    One of the main and important reasons for Ms. Burt selecting her Putative Class Vehicle was its 2.0L Petrol Engine which was advertised by Defendant as efficient, safe, and reliable. []

44.    Prior to her purchase, Ms. Burt saw Volkswagen's newspaper, magazine, social media, in store, and television ads touting that the new, certified pre-owned, and used Putative Class Vehicles were reliable, durable, safe, efficient, of high fit and exceptional quality, and that they were premium products. Ms. Burt relied on Defendant's representations in making her purchase. []

57.    Defendant advertised the Class Vehicle's 2.0L engine as one that "balances efficiency and power." It then gives very specific details about the engine touting its lightweight and modern technology. Defendant's successful marketing affords them a substantial price premium for their vehicles compared to their nonpremium competitors.

(Doc. # 16 at ¶¶ 42, 44, 57).

Defendant argues that these allegations are merely conclusory and her reliance on statements in advertising for her fraud claim is misplaced. (Doc. # 26-1 at 23). Plaintiff contends she has identified the defect and she has pled reliance and causation. (Doc. # 29).

"'The elements of fraud are (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation.'" *Sampson v. HeartWise Health Sys. Corp.*, 386 So. 3d 411, 34 (Ala. 2023) (quoting *Padgett v. Hughes*, 535 So. 2d 140, 142 (Ala. 1988)). "When a plaintiff pleads fraud, 'the rule of generalized notice pleading is qualified by Rule 9(b), Ala. R. Civ. P.' [and] '[i]n all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity." *Crum v. Johns Manville, Inc*., 19 So. 3d 208, 217 (Ala. Civ. App. 2009) (internal citation omitted).

"[U]nder Rule 9, the pleader must state the time, the place, the contents or substance of the false representations, the fact misrepresented, and an identification of what has been obtained." *Crum*, 19 So. 3d at 218 (cleaned up). That is, Plaintiff was required to plead the alleged misrepresentations regarding the Oil Separator Defect or the characteristics of the vehicle with at least some particularity. She utterly failed to do so. Her FAC simply references in general that her car was advertised as efficient, safe, reliable, of exceptional quality, and was a premium product. And she alleges she relied on these representations in making her purchase.[2]

These type of "representations" do not support a fraud claim in Alabama. Statements made in advertising a vehicle about its quality, such as that the car was "top of the line" and a "smooth riding" car, are "not statements of material fact," but rather are puffery that cannot be relied on as a statement of material fact to support a fraud claim. *Mason v. Chrysler Corp.*, 653 So. 2d 951, 954 (Ala. 1995) (citing *McGowan v. Chrysler Corp.*, 631 So.2d 842 (Ala. 1993) and *Fincher v. Robinson Bros. Lincoln Mercury, Inc.*, 583 So.2d 256 (Ala. 1991)).

Moreover, as discussed above, the economic-loss rule "prevents tort recovery when a product damages itself, causing economic loss, but does not cause personal injury or damage to any property other than itself." *Vesta Fire Ins. Corp. v. Milam & Co. Constr.*, 901 So.2d 84, 106–07 (Ala. 2004). However, the economic-loss rule does not prevent a tort action when the injury caused is personal or is to property other than the complained-of product. *See Lloyd Wood Coal Co. v. Clark Equip. Co.*, 543 So.2d 671, 674 (Ala.1989) (adopting the reasoning of *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986)).

---

[2] Plaintiff also alleges that the Warranty represents that the vehicle was "free of defects" (FAC ¶ 31, 49). However, the Warranty booklet makes no such representation. (Doc. # 26-3). Rather it promises certain free-of-charge repairs, (*Id.* at 12, 15), and regarding Federal Emissions Control System Defect Warranty the booklet only states that the vehicle is "free from defects in manufacturer's material and workmanship which causes the vehicle to fail to conform with EPA regulations for 2 years after the date of first use or delivery of the vehicle to the original retail purchaser or original lessee or until the vehicle has been driven 24,000 miles." (*Id.* at 17).

Plaintiff's failure to plead personal injury type damages is understandable because it runs contrary to the idea that she seeks to represent a class and she contends the claims she has presented are typical of the class. Her tort claims for economic damages to her vehicle are barred by Alabama's economic-loss rule. If she had properly alleged actionable misrepresentations (which, again, she did not), her recovery would have been limited to the oil stain damage to her driveway, streets, and parking areas in her community.

Because Plaintiff failed to adequately allege actionable misrepresentations by Defendant, her fraudulent misrepresentation claim in Count Six of the FAC is therefore due to be dismissed.

### 3. Plaintiff's Suppression Claim

The suppression claim in Count Six is due to be dismissed as barred by economic-loss rule for the same reasons as is her misrepresentation claim (discussed immediately above). It also fails because Plaintiff has not adequately alleged that Defendant had a duty to disclose the alleged Oil Separator Defect.

"The elements of a claim of fraudulent suppression are: (1) the defendant had a duty to disclose a material fact; (2) the defendant had actual knowledge of the fact; (3) the defendant suppressed the material fact; (4) the defendant's suppression of the fact induced the plaintiff to act or to refrain from acting; and (5) the plaintiff was damaged as a result of the suppression." *Hurry*, 622 F. Supp. 3d at 1152 (citing *Waddell & Reed, Inc. v. United Investors Life Ins. Co.*, 875 So. 2d 1143, 1161 (Ala. 2003)). "A duty to communicate can arise from a confidential relationship between the plaintiff and the defendant, from the particular circumstances of the case, or from a request for information, but mere silence in the absence of a duty to disclose is not fraudulent." *Mason*, 653 So. 2d at 954 (citing *Dodd v. Nelda Stephenson Chevrolet, Inc.*, 626 So.2d 1288 (Ala.1993); *Hardy v. Blue Cross & Blue Shield of Alabama*, 585 So.2d 29 (Ala.1991); *King v.*

*National Foundation Life Ins. Co*., 541 So.2d 502 (Ala.1989); *McGowan v. Chrysler Corp*., 631 So.2d 842 (Ala.1993); Ala.Code 1975, § 6–5–102).

> This court previously examined *Mason* and explained the following:

> In *Mason*, the plaintiffs' contacts with defendant Chrysler Corporation consisted primarily of their viewing national advertisements before they purchased the vehicle and their presenting the vehicle for repair. *Mason*, 653 So.2d at 954. The Alabama Supreme Court held as a matter of law that those facts were insufficient to give rise to a duty to speak. *Id*. at 954–55. Here, Plaintiff has alleged no more than what the Alabama Supreme Court held in *Mason* was insufficient to give rise to a duty to speak. Because Plaintiff has failed to adequately plead the first element of his Fraud by Suppression claim, that claim is due to be dismissed.

*Fowler v. Goodman Mfg. Co. LP*, 2014 WL 7048581, at *10 (N.D. Ala. Dec. 12, 2014). Here, too, Plaintiff has not alleged the existence of a confidential relationship with Defendant. As in *Mason*, Plaintiff's contacts with Defendant consisted solely of her viewing national advertisements before purchasing her vehicle. Under these circumstances, Plaintiff has failed to allege special circumstances giving rise to a duty on Defendant's part to speak. *Fowler*, 2014 WL 7048581, at *10; *Mason*, 653 So.2d at 954. Therefore, the fraudulent suppression claim in Count Six is due to be dismissed.

For all of these reasons, Plaintiff's fraud claims in Count Six are due to be dismissed.

### F.    New Jersey Consumer Fraud Act (Count Seven)

Plaintiff has conceded that this claim is due to be dismissed. (Doc. # 29 at 19, n.7).

### G.    Alabama Deceptive Trade Practices Act (Count Eight)

The ADTPA prohibits in relevant part "[c]ausing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services," "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," and "[e]ngaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." Ala. Code § 8-19-5.

"There is a split among the district courts sitting within the Eleventh Circuit—and even within the Northern District of Alabama—over whether a plaintiff may simultaneously maintain common law fraud claims and claims under ADTPA." *Morris v. Walmart Inc.*, 2020 WL 470287, at *6 (N.D. Ala. Jan. 29, 2020). One line of cases holds that a plaintiff "procedurally waive[s] her right to pursue a claim under the ADTPA by pursuing her other fraud claims" because "[a]llowing [a plaintiff] alternatively to plead her ADTPA and other fraud claims [] would enlarge the substantive right and remedy of the ADTPA, supplanting the prerogative of state law." *Holmes v. Behr Process Corp.*, 2015 WL 7252662, at *2-3 (N.D. Ala. Nov. 17, 2015).

However, even if the court were inclined to allow alternative pleading of an ADTPA claim where substantive fraud claims are also pled, allowing Plaintiff to proceed on her ADTPA claim here is futile because she has utterly failed to plead any facts establishing there was any actionable deception. As discussed above, Plaintiff has failed to plausibly plead either any misrepresentations made by Defendant with particularity or that Defendant had a duty to disclose the alleged Oil Separator Defect to Plaintiff. Despite the alleged Oil Separator Defect, Plaintiff was able to drive her vehicle more than 57,000 miles before discovering the issue, she does not claim that her vehicle was inoperable or that she had had to have it repaired, and she does not claim to have ever stopped driving it. And, Plaintiff had not alleged facts that show that the vehicle was rendered unsafe.

Plaintiff has failed to adequately plead an ADTPA claim; but, in any event because "[a]llowing [Plaintiff] alternatively to plead her ADTPA and [her] other fraud claims [] would enlarge the substantive right and remedy of the ADTPA, supplanting the prerogative of state law" Count Eight of the Complaint is due to be dismissed. *Holmes*, 2015 WL 7252662, at *2-3.

### H.    Virginia Consumer Protection Act (Count Nine)

Plaintiff has conceded that this claim is due to be dismissed. (Doc. # 29 at 19, n.7).

## I.    Unjust Enrichment (Count Five)

Defendant moved to dismiss Plaintiff's unjust enrichment claim because it is an equitable claim and Plaintiff has not plausibly pled that there is no adequate remedy at law in the form of damages for her alleged injuries. (Doc. # 26-1 at 31-33). Plaintiff admits that this claim is pled in the alternative, and she has not disputed the fact that she has failed to plead that there is no adequate legal remedy. (Doc. # 29 ay 18).

"It is well-settled law in Alabama that where an express contract exists between two parties, the law generally will not recognize an implied contract regarding the same subject matter.'" *Carter v. L'Oreal USA, Inc*., 2017 WL 3891666, *3 (S.D. Ala. Sept. 6, 2017) (quoting *Kennedy v. Polar-BEK & Baker Wildwood Partnership*, 682 So. 2d 443, 447 (Ala. 1996)). "When there is no dispute between the parties that an express warranty exists and a plaintiff alleges a breach of the express warranty, that plaintiff cannot also allege an unjust enrichment claim." *Carter*, 2017 WL 3891666, *3 (citing *White v. Microsoft Corp*., 454 F. Supp. 2d 1118, 1133 (S.D. Ala. 2006)).

Plaintiff has alleged the existence of an Express Warranty between the parties in her Complaint and Amended Complaint, and Defendant not only does not dispute the existence of the Warranty, but has provided the court with a copy. Under these circumstances, Plaintiff's unjust enrichment claim is not cognizable. *Id*.; *see also White*, 454 F. Supp. 2d at 1133 (unjust enrichment claim is barred where "an express contract (the Warranty) governs the parties' relationship and covers the precise issues as to which [Plaintiff] is asking the Court to imply a contract to prevent wrongful retention of funds).

Because there is no dispute that the Express Warranty between Plaintiff and Defendant governing when the alleged defect would be repaired without cost, Plaintiff's unjust enrichment claim is due to be dismissed. *Carter*, 2017 WL 3891666, *3; *White*, 454 F. Supp. 2d at 1133.

**IV.    Conclusion**

For all of the foregoing reasons, Plaintiff has failed to state a claim against Defendant and Defendant's Motion to Dismiss is therefore due to be granted. The court's dismissal of Plaintiff's individual claims will be with prejudice for several reasons.

First, a court need not give a represented party any opportunity to amend a deficient pleading where no amendment has been requested. *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) ("A district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court."). Plaintiff has not sought leave to amend again.

Second, Plaintiff, who is represented by counsel,[3] previously amended her Complaint after being alerted to the deficiencies in her claims through a prior Motion to Dismiss, and she did not adequately remedy those deficiencies in the Amended Complaint.

A separate order will be entered.

**DONE** and **ORDERED** this June 11, 2025.

R. DAVID PROCTOR
CHIEF U.S. DISTRICT JUDGE

---

[3] The court also believes that Plaintiff herself is a lawyer. *See* https://dagneylawgroup.com/ (last visited June 10, 2025).